UNITED STATES of America, Plaintiff–Appellee,

v.

Harry Robert McDONALD, Defendant–Appellant.

No. 89–8011.

United States Court of Appeals, Fifth Circuit.

June 28, 1990.

---

* District Judge of the Western District of Texas, sitting by designation.

Michael S. McDonald, Asst. Federal Public Defender, Lucien B. Campbell, Federal Public Defender, El Paso, Tex., for defendant-appellant.

Philip Police, Mrs. LeRoy M. Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GARZA, HIGGINBOTHAM, and DUHÉ, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Customs agents arrested McDonald at the border in El Paso, as he tried to cross

from Juarez with 70 pounds of marijuana in the gas tank and back seat of his car. A jury convicted him of importation of marijuana and possession of marijuana with intent to distribute. We find error in the admission of evidence regarding McDonald's past drug use, the admission of hearsay testimony, and in the prosecutor's closing argument. But there was other strong evidence of McDonald's guilt, and his own story was far-fetched. We therefore hold the errors harmless and affirm the conviction.

## I.

McDonald arrived at the inspection station without his driver's license, so customs inspector Martinez referred him to the secondary inspection area. McDonald told Martinez he had lost his wallet and license, but in secondary, he told inspector San Roman that his wallet had been stolen in Juarez. He said the theft had thwarted his planned trip to the Mexican interior, and he was therefore returning home. All of the evidence at trial indicated that McDonald remained calm and friendly at this point.

While McDonald gave biographical data to San Roman, inspector Kunter examined his car. This made McDonald nervous and tense, according to both agents, and he asked them if something was wrong. San Roman testified that McDonald paid particularly close attention when Kunter looked around his back seat, and relaxed when he found nothing. But when Kunter turned his attention to the gas tank, McDonald got nervous again. Kunter noticed the tank's support straps were bent and secured by clean bolts. He struck the tank on either side and in the middle—the strikes on either side produced a "thud," while the strike in the middle produced a "ping." Kunter therefore concluded there was something besides gasoline in the tank.

The inspectors brought out a drug-sniffing dog to check the car. The dog signaled to the tank and the back seat, and the inspectors found the marijuana. During a subsequent interview, McDonald volunteered that he had known "something" was in the tank. The inspectors testified he then asked them "how much?" McDonald says his next question was not "how much" but "what?"

McDonald's story at trial was somewhat different from the story he gave the inspectors in El Paso. He testified that he had in fact gone to the Mexican interior to visit friends. On the way down from California, he said he had averaged 300–325 miles per tank of gas. During an overnight stop on his way home, McDonald said he was arrested for fighting a hotel bartender over the price of a drink and spent three nights in jail. When he was released, he said his car was in front of the jail, rather than at the hotel where he had left it, and that this surprised him very much. He had been carrying his car keys when arrested, and assumed the police must have taken them and moved his car.

It was at this point, McDonald testified, that he noticed his car's fuel efficiency had taken a dramatic turn for the worse. After he had driven only 60–70 miles, he had consumed ¾ of a tank of gas. He said he thought he either had a leak or had bought bad fuel; but when he examined the tank, he did not notice the clean bolts and bent straps. Since he found no leak, McDonald testified, he assumed the gas gauge was broken, but to be safe, he filled up every time the gauge neared empty, about every 150 miles. He noticed he could only add 10–12 gallons to his 25 gallon tank before it registered full.

McDonald testified that when he got to Juarez, he mislaid his wallet at a gas station, and when he went back for it, it was gone. He reported the loss to the Juarez police, he said, but they told him they could not help him. He testified he had to panhandle for the $.85 toll to cross the bridge into El Paso.

## II.

To convict McDonald for possession with intent to distribute, the government had to prove that he knowingly possessed the marijuana with the intent to distribute it. To convict for importation, the government had to show that he knowingly played a

role in bringing the marijuana into the country. *United States v. Martinez–Mercado,* 888 F.2d 1484, 1491 (5th Cir.1989). The only dispute at trial was whether McDonald knew the marijuana was in his car.

Possession of or control over a vehicle containing drugs in a hidden compartment does not itself prove guilty knowledge. *United States v. Olivier–Becerril,* 861 F.2d 424 (5th Cir.1988). Corroboration—i.e., "circumstances evidencing a consciousness of guilt"—is required. *Id.* at 427. In *United States v. Littrell,* 574 F.2d 828 (5th Cir.1978), the defendant drove a vehicle to a meeting point for a drug transaction, got out, and talked briefly with the participants. The court held this evidence insufficient to convict for possession with intent to distribute, as there was no evidence the defendant knew what was in the car. 574 F.2d at 834–835. McDonald points out that he was never at a drop point and never was seen talking to anyone known to be involved in a drug transaction.

In *United States v. Williams–Hendricks,* 805 F.2d 496 (5th Cir.1986), this court found the evidence sufficient when the marijuana was concealed in one of the defendant's gas tanks (his car had two). The evidence showed the defendant had known this tank was not working properly before the trip began, and that he had his son, who was an auto mechanic, on the trip with him, but never attempted to have the tank fixed. McDonald was not travelling with a mechanic and, if his story is believed, he did try to find out what was wrong with the tank, but missed the problem.

As McDonald points out, other cases in which we held the evidence sufficient to establish guilty knowledge involved more egregious circumstances than does his. In *United States v. Moreno,* 579 F.2d 371 (5th Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979), the drugs were in a container hinged to the car's bumper, visible to anyone who looked at the back of the car. In *United States v. Legeza,* 559 F.2d 441 (5th Cir.1977), the defendant's car smelled of marijuana, and he testified that he knew the pillow cases

containing the marijuana "felt funny" and that the owner of the car was involving him in some sort of illegal scheme. In *United States v. Maspero,* 496 F.2d 1354 (5th Cir.1974), several handfuls of marijuana were in plain view on the floor of certain defendants' tractor-trailer, and they had been observed in a variety of suspicious activities. In *United States v. Fonseca,* 490 F.2d 464 (5th Cir.), *cert. denied,* 419 U.S. 1072, 95 S.Ct. 660, 42 L.Ed.2d 668 (1974), the defendant had been stopped a few weeks earlier in the same car, and inspectors saw marijuana seeds and rolling papers in that earlier inspection.

■ Nevertheless, we think the government's evidence was sufficient in ordinary circumstances to establish guilty knowledge. McDonald's nervousness alone is inconclusive, *Williams–Hendricks,* 805 F.2d at 500, but in light of the other evidence, the agents' testimony about the way McDonald acted during the examination of his car indicates guilty knowledge. The change in his stories from the primary inspection station to the secondary inspection station, and from the secondary inspection station to the witness stand also evidences guilty knowledge, *Martinez–Mercado,* 888 F.2d at 1491, as does his heightened anxiety during the inspection of the backseat and the trunk. Further, McDonald owned the car and had had possession for some time, facts which can suggest guilty knowledge. See *Williams–Hendricks,* 805 F.2d at 501; *United States v. Olivier–Becerril,* 861 F.2d 424, 427 (5th Cir.1988).

### III.

This case, however, does not present ordinary circumstances. On two occasions, the trial court admitted evidence it should have excluded, and the court also allowed the prosecutor to engage in improper closing argument. The result of these errors was that information undermining McDonald's credibility improperly came to the jury's attention. We must decide whether these errors were harmless, remembering that in this case the jury's task was essentially to choose whose story to believe.

## A.

### 1.

■ The trial court first erred when it allowed the government to cross-examine McDonald, over defense counsel's objection, about his past drug use. McDonald protested, saying he had been told he would not be asked about that, then finally replied that he had used speed and cocaine in the past. The government contends the evidence was admissible under Rules 608(b), 609, and 404(b).

Rule 608(b) allows a witness to be impeached with specific instances of conduct if they are probative of truthfulness. This court has held, however, that drug use is not probative of truthfulness. *United States v. Williams*, 822 F.2d 512, 516–517 (5th Cir.1987). Further, Rule 609 did not justify the admission of this evidence because the government did not offer evidence of a prior conviction for drug use. See *NLRB v. Jacob E. Decker & Sons*, 569 F.2d 357 (5th Cir.1978); *United States v. Turquitt*, 557 F.2d 464 (5th Cir.1977).

■ Rule 404(b) forbids evidence of other crimes, wrongs, or acts to establish that the defendant acted in conformity therewith, but allows such evidence to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The government contends the evidence of McDonald's past drug use was relevant to determining whether McDonald had guilty knowledge.

We disagree. Certainly a drug user might know more about how drugs are imported, and might be expected to be suspicious if his tank was malfunctioning in McDonald's circumstances. But there is a large leap from evidence that McDonald in the past used cocaine and speed to an inference that he therefore likely knew his car contained marijuana that day. The leap is too large. We think this evidence was only truly probative of McDonald's character—i.e., a drug user is more likely to be involved in a deal like this than a non-drug user. It was therefore inadmissible.

### 2.

■ McDonald claims error in the admission of alleged hearsay testimony. He challenges the testimony of the U.S. Customs Service's liaison with the Mexican state police. The liaison testified that he had gone with the chief of the state police to search the state police's records for a report from McDonald that his wallet had been stolen. They found none. McDonald points out that there was no evidence of the Mexican state police procedure for receiving such reports from local authorities such as the Juarez police, or the reliability of Mexican officers for making such reports. The government conceded at oral argument that this evidence was hearsay, but argues it was admissible under the exception in Fed.R.Evid. 803(10).

Rule 803(10) provides that to establish the absence of a report which would have been regularly made and preserved by a public office or agency, evidence in the form of a Rule 902 certificate or testimony that a diligent search failed to disclose the report is required. We see nothing in the record to indicate whether such reports were regularly made and preserved by Mexican officials. The government need not have produced the custodian of the records, see *Jackson v. United States*, 250 F.2d 897, 901 (5th Cir.1958), but it was required to produce some form of proof. The trial court therefore erred in admitting this evidence.

### 3.

■ McDonald testified that he went to Mexico to "get away" from his bitter domestic disputes with ex-wife. His ex-wife had custody of their daughter, was living with a motorcycle gang, and would not say where the girl was living. McDonald emotionally testified that he had to bring his alimony/child support checks to a hamburger stand, and that was the only time and place he could see the girl. The prosecutor commented in closing argument that if McDonald wanted the girl so badly, he could serve his wife with a subpoena for a custody action at their next meeting. McDonald says this was prejudicial and in-

flammatory, and the prosecutor was arguing outside the record and acting as an expert witness on divorce and custody law and procedure. The trial court overruled McDonald's objection on these grounds. He is correct that the prosecutor was arguing matters not in the record, and acting as an expert witness at least as to the manner in which custody actions may be begun. The trial court should have sustained the objection.

### B.

We now turn to the harmless error inquiry. Errors in the admission of evidence or in overruling objections to arguments of counsel are harmless unless they affect the defendant's substantial rights. Fed.R. Crim.P. 52(a); *Muzyka v. Remington Arms Co., Inc.,* 774 F.2d 1309 (5th Cir. 1985) (admission of evidence); *United States v. Lowenberg,* 853 F.2d 295 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1170, 103 L.Ed.2d 228 (1989) (closing argument).

We think the admission of the evidence about McDonald's prior drug use and the admission of the liaison's testimony regarding the absence of the report were harmless. This evidence undoubtedly damaged McDonald's credibility in the jury's eyes. But his story was so incredible that we do not think the damage inflicted was substantial. To acquit, the jury would have had to have believed that the police who held him for the fight replaced his old gas tank with a new one filled with marijuana and let him drive away, without being certain where he was going or that there would be any way to retrieve the marijuana in the United States. They would have to believe this even though it is not the story McDonald originally told the customs inspectors. McDonald told them then that his wallet had been lost or stolen, thwarting a planned trip to the interior. It was not until they found the marijuana that he changed his story. They would have had to believe he drove from the interior to the border with a malfunctioning gas tank, which when inspected revealed obvious evidence of tampering, but re-

mained oblivious even to the possibility that drugs might be in the tank. He remained oblivious although the car carried a strong odor of battery acid, which is frequently used to mask the aroma of illegal drugs. The agents testified that the odor was very powerful. The jury would have had to believe that the odor somehow remained that strong even though McDonald had been driving for several days since his release from jail. The jury would also have had to believe that McDonald had an innocent reason for becoming more agitated when the inspector examined his gas tank and his back seat, where the marijuana was found. We believe all of this asks too much of any rational juror.

In determining whether a defendant's substantial rights have been affected by improper closing argument, we examine (1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions, and (3) the strength of the evidence of the defendant's guilt. *United States v. Lowenberg,* 853 F.2d at 302. Standing alone, the prosecutor's comment about McDonald's domestic troubles was not reversible error. The passing reference to McDonald's options regarding a custody battle could hardly have prejudiced him, in light of the strong evidence against him.

We likewise do not think that all of the errors, taken together, require reversal. The government's case was simply too strong.

### IV.

McDonald's arguments that the government was not entitled to a jury instruction on deliberate ignorance, and that he was prejudiced by the district court's admonishment to both counsel to refrain from nonverbal communications with the jury, also fail. McDonald himself said his car mysteriously appeared in front of the police station when he was released from jail, and that thereafter his gas mileage was substantially curtailed. McDonald told the agents he knew "something" was in the tank. This constitutes sufficient evidence to support a deliberate ignorance instruction.

Further, we fail to see how McDonald could have been prejudiced by the admonishment to counsel to refrain from nonverbal communications with the jury. The district judge made the admonishment out of the hearing of the jury, merely stating that in this trial and other trials, he had noticed both sides attempting to communicate in this fashion while examining witnesses and at other times, and that he wanted it stopped. There was nothing in that statement that prejudiced McDonald, and we do not see how it hampered his defense in any way.

## V.

For the foregoing reasons, we affirm the conviction.

AFFIRMED.