UNITED STATES of America, Plaintiff–Appellee,

v.

Abel GARCIA, Defendant–Appellant.

No. 90–2050.

United States Court of Appeals, Fifth Circuit.

Nov. 9, 1990.

Rehearing Denied Dec. 14, 1990.

1372

Eduardo Jaime, Laredo, Tex. (Court-appointed), for defendant-appellant.

Abel Garcia, Laredo, Tex., pro se.

James L. Turner, Paula C. Offenhauser, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, THORNBERRY and HIGGINBOTHAM, Circuit Judges.

CLARK, Chief Judge:

Abel Garcia appeals his conviction and sentence for conspiracy and possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846. We affirm.

I.

Robert A. Aguilera (Aguilera), a/k/a Robert Lopez, drove a Ford Bronco to an apartment complex where Abel Garcia lived. He was met there by Roberto Hinojosa–Pacheco (Pacheco), Garcia's stepbrother. Aguilera testified that he was privy to an ensuing conversation where Pacheco offered Garcia $200 to store the Bronco on the apartment's parking lot and safeguard its contents. While it is undisputed that Pacheco gave Garcia two $100 dollar bills as compensation for his undertaking, Garcia denies Aguilera's testimony that Pacheco also advised Garcia that the Bronco contained a load of marijuana. Garcia testified that when he questioned Pacheco, he was only told that the truck was not stolen, and that it contained nothing of importance for him to worry about.

Pacheco was not available to testify at Garcia's trial. Pacheco's partner in this and similar schemes involving distribution of marijuana was Miguel A. Juarez–Fierro. These two men were convicted in a joint trial, subsequent to Garcia's trial, of conspiracy and possession with intent to distribute.

Aguilera was a confidential informant to the Texas Department of Public Safety. He was ultimately paid $800 for his information in this case. Aguilera had previously advised Officer Jorge Aguilar of the vehicle's contents, location and destination. Aguilar established surveillance of the vehicle at Garcia's apartment complex. The Bronco was not moved once parked in the complex, and remained in the lot for several days.

Aguilar contacted Eduardo Ruiz, an investigator for the Laredo district attorney's office. Garcia worked for Ruiz at Ruiz's Texaco station. When informed that Garcia was under investigation, Ruiz and a Texas Ranger picked up Garcia in an official vehicle and took him to DPS headquarters. He was questioned for several hours by Aguilar in Ruiz's presence. According to Aguilar, Garcia stated he was aware that marijuana was in the Bronco. Ruiz stated that Garcia never admitted such knowledge. Based on the information of the informant Aguilera and the statement he asserts Garcia made, Aguilar secured a search warrant for the Bronco. It contained over 200 pounds of marijuana in several duffel bags.

The district court suppressed Garcia's statement as the product of an illegal arrest. Garcia attempted to plead guilty when offered a favorable plea bargain, which depended on his later testimony. The court rejected this plea upon learning it was against the advice of Garcia's counsel, to whom Garcia had steadfastly maintained his innocence.

During trial to the bench, Garcia disavowed knowledge of the marijuana in the Bronco. He did not have the keys to the Bronco, and the government produced neither evidence nor testimony that Garcia was ever in or near the vehicle. The Bronco had dark-tinted windows, so he could not see into it. Garcia testified that he believed the vehicle contained electronic merchandise which Pacheco intended to smuggle into Mexico for sale. Pacheco had done this in the past, and Garcia believed the Bronco was part of one of these deals. While Garcia admits that Pacheco told him there was "a package there with something," Garcia testified "I was curious. But I never thought it would be marijuana." While he thought it "strange" for Pacheco to give him so much money for the simple act of "allowing" the vehicle to remain on the apartment complex lot, Pacheco assured him the vehicle was not stolen. According to Garcia, Pacheco told him that it "just contained something. But, [Pacheco] never said what."

Garcia was convicted of conspiracy to possess with intent to distribute and possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841, 846. The district court calculated Garcia's guideline range, which allowed a reduction for minor participation, but denied any reduction for acceptance of responsibility. The court imposed concurrent terms of 42 months imprisonment, three years of supervised release and a special assessment of $100.

## II.

Garcia alleges three grounds of error: (1) the government improperly withheld discoverable material requested by Garcia's counsel concerning the confidential informant; (2) the evidence was insufficient to convict him of either possession or conspiracy; and (3) the sentencing court erred in allowing no reduction for acceptance of responsibility.

### A. Discovery of Background of Confidential Informant

Prior to trial Garcia's counsel filed numerous discovery motions, two of which are relevant here. A "MOTION FOR DISCOVERY AND INSPECTION" requested the "name, identity and whereabouts of any informer who gave information leading to the arrest of the Defendant, and whether said informant was paid by the Govern-

ment for such information." A "MOTION OR REQUEST FOR DISCLOSURE OF INFORMATION REGARDING CONFIDENTIAL INFORMANTS" more specifically addressed these concerns. It requested, among other things, information on any written agreements, the confidential informant's files, the nature and duration of the confidential relationship, the terms and requirements of the current agreement, any monies paid or accrued, charges to be dismissed or plea agreements reached, and the method and number of investigations by any confidential informant. The district court made no recorded ruling on these motions. The record contains no written response by the government.

At trial, the government put its paid confidential informant, Aguilera, on the stand. Garcia did not interpose an objection or a request for continuance. The judge took an active role in the questioning of witnesses. To the court's question, "Did they pay [for your information and role] in this case?" Aguilera responded, "No, sir." Aguilera's responses to the status of charges, if any, filed against him in this transaction were abstruse. The court also asked, "Have you been convicted of anything before?" Aguilera responded, "No, sir, I haven't." This answer walks on the technical edge of the truth. As Garcia's counsel discovered after trial, Aguilera had been put on probation for assault for one year by a Texas court pursuant to a "deferred adjudication" procedure provided by Texas law. Because he met the terms of his probation, no final adjudication of guilt was made.

A question was raised as to the nature of the confidential relationship. The government put Officer Aguilar back on the stand. He had testified previously about the surveillance and investigation leading to the prosecution at hand. He testified that Aguilera was their informant from the beginning, that he had worked for them previously, and that no charges were ever contemplated against him based on this transaction. The court again asked questions about monetary arrangements. Aguilar responded that Aguilera received $800, but that this amount had not been set in advance, nor did it depend on testimony at trial.

Garcia argues that Aguilera's false and equivocal answers at trial, when scrutinized in the light of his discovery requests, demands reversal for violation of FED.R. CRIM.P. 16 and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We disagree.

■ Assuming that Garcia's motions—never responded to by the government or brought to the court's attention for rulings—were proper requests under Rule 16 and that the government was obliged to produce the requested information, when Aguilera took the stand, Garcia neither objected nor requested additional time. Rule 16 states its own remedy for violation:

> If at any time during the course of the proceedings *it is brought to the attention of the court that a party has failed to comply with this rule,* the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

FED.R.CRIM.P. 16(d)(2) (emphasis added). Failure to object or to request a continuance to meet effectively material subject to disclosure during discovery weighs against a defendant when the prejudice complained of on appeal could have been corrected by originally drawing the court's attention to the matter during the trial. *United States v. Scruggs,* 583 F.2d 238, 242 (5th Cir.1978); *United States v. Avila,* 443 F.2d 792, 795 (5th Cir.), *cert. denied,* 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 258 (1971); *see also United States v. Kubiak,* 704 F.2d 1545, 1551–52 (11th Cir.), *cert. denied,* 464 U.S. 852, 104 S.Ct. 163, 78 L.Ed.2d 149 (1983). Without regard to whether the government's nondisclosure may have been in any way justified, "our cases consistently have required a showing of prejudice to the substantial rights of the defendant before reversing because of an error in administering the discovery rules." *Scruggs,* 583 F.2d at 242.

In Garcia's case, the information requested substantively concerned only the informant's credibility. However, the court itself tested the limits of this credibility. The judge brought out the paid status of the informant, despite Aguilera's testimony to the contrary. Technically, Aguilera testified truthfully about his previous convictions. Under Texas law, successful probation of a deferred adjudication is not deemed to be a conviction. Texas Code Crim.Proc.Ann. art. 42.12 § 5(c) (Vernon Supp.1990). *See Martinez–Montoya v. INS*, 904 F.2d 1018 (5th Cir.1990). We find any prejudice to Garcia due to lack of knowledge of this procedure was insubstantial.

The foregoing analysis is also helpful with regard to the question presented under *Brady v. Maryland, supra*. *Brady* is based in part on the defendant's need to know any exculpatory evidence, and holds that suppression of requested information favorable to an accused violates due process. *Brady*, 373 U.S. at 87–88, 83 S.Ct. at 1196. This encompasses evidence concerning the reliability of a witness that may be determinative of guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). However, this decision is limited by the harmless error rule, and does not compel reversal when the defense was able to adequately prepare his case. *United States v. Cochran*, 697 F.2d 600, 607 (5th Cir.1983). Furthermore, a finding of materiality is required under *Brady*. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

Garcia's defense suffered no prejudice due to the government's failure to disclose the information. Garcia's concerns about Aguilera's compensation and criminal record went only to the weight and reliability of his testimony. When Aguilera testified incorrectly as to his fee and other aspects of his confidential arrangement, the government placed Officer Aguilar back on the stand to correct Aguilera's untruthful answer to questions about financial arrangements. Aguilera's answer about his criminal record was not untrue. By the time this experienced trial judge passed judgment, he had full and correct information upon which to appraise Aguilera's testimony. When making his findings of fact after obtaining correct information, he clearly stated, "I believe the testimony of the confidential informant beyond a reasonable doubt."

Assuming the motions were the equivalent of a *Brady* demand, any failure on the part of the government to comply fully with *Brady* mandates in this case to be harmless. We cannot say that the court would have decided this case differently had Garcia obtained this information before trial or before Aguilera testified. We further note that the court did not rely exclusively on Aguilera's testimony. Its decision to convict was not solely premised on the finding of knowledge on the part of Garcia as testified to by Aguilera. Alternatively, the court relied on Garcia's willful blindness to the truth of this transaction under the most unusual of circumstances.

Garcia also argues the applicability of cases emanating from *Rovario v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). There the Supreme Court explained the government privilege concerning nondisclosure of the identity of confidential informants. These cases are inapplicable where, as here, the government produced its informant for testimony and cross-examination at trial.

Garcia also cites *United States v. Cervantes–Pacheco*, 826 F.2d 310 (5th Cir. 1987) (en banc), *cert. denied sub nom. Nelson v. United States*, 484 U.S. 1026, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988). That case discussed testimony by an informant who had been promised a contingent fee by the government. We held that even though such an informant is not disqualified from testifying, the government "must not deliberately use perjured testimony or encourage the use of perjured testimony," and it "must also make a complete and timely disclosure to the accused of the fee arrangement it has made with the informant

in accordance with *Brady.*" *Id.* at 315–16. Garcia's is not a situation where the informant, Aguilera, testified subject to a contingent fee arrangement. The government did not use or encourage perjured testimony—it put on its own witness to clear up the confusion generated by the informant's testimony. The fact that the government did not disclose this arrangement before trial does not keep any error from being harmless beyond a reasonable doubt.

## B. Sufficiency of the Evidence

Garcia challenges the sufficiency of the evidence under both counts of his conviction. The evidence is sufficient if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. When reviewing the sufficiency of the evidence to support a conviction, the facts and all reasonable inferences therefrom will be viewed in the light most favorable to the court's findings. *United States v. Rodriguez–Mireles*, 896 F.2d 890, 892 (5th Cir.1990).

### 1. Conspiracy

■ To sustain a conviction for a conspiracy to violate the narcotics laws, the government must show that (1) a conspiracy existed, (2) the defendant knew of the conspiracy, and (3) the defendant voluntarily participated in the conspiracy. *United States v. Kaufman*, 858 F.2d 994, 999 (5th Cir.1988). To prove the existence of the conspiracy, the government must prove by substantial evidence that two or more persons agreed to violate the narcotics laws; however, this agreement may be shown by circumstantial evidence such as the conduct of the alleged participants or evidence of a scheme. *United States v. Morgan*, 835 F.2d 79, 82 (5th Cir.1987). A defendant's knowledge of an illegal agreement and his participation in the scheme may be inferred from the circumstances. *Id.* "A conviction will not be reversed for lack of evidence that the defendant was acquainted with or knew all of the coconspirators, or lack of evidence that he knew each detail of the conspiracy, or because he became a member of the conspiracy after its inception, or played only a minor role in the overall scheme." *United States v. Vergara*, 687 F.2d 57, 61 (5th Cir.1982) (citations omitted).

■ Garcia asserted that he believed Pacheco gave him the money because the Bronco contained electronics to be smuggled into Mexico for sale. However, the district court specifically accepted the informant's testimony as true, which it was entitled to do as the arbiter of fact. *See United States v. Jones*, 839 F.2d 1041, 1048 (5th Cir.), *cert. denied*, 486 U.S. 1024, 108 S.Ct. 1999, 100 L.Ed.2d 230 (1988). The court was entitled to conclude that he knew marijuana was in the vehicle, and that he was given $200 to safeguard it. Thus, a conspiracy clearly existed between Pacheco and Garcia without regard to whether Pacheco and Juarez–Fierro also conspired. Although Garcia's role in this endeavor was minor and he might not have known all the participants or details of the scheme, this does not affect the finding that there was a conspiracy in which he participated.

Alternatively, the district court based Garcia's conviction on a finding of "deliberate" ignorance and conscious avoidance of the truth as to the nature of this transaction. Because the proof supports the court's findings on conspiracy, we need not reach this alternative ground.

### 2. Possession

■ To sustain a conviction for possession with intent to distribute, the government must show that the defendant (1) knowingly (2) possessed contraband (3) with the intent to distribute it. *United States v. Villasenor*, 894 F.2d 1422, 1426 (5th Cir.1990). Possession of contraband may be either actual or constructive, and may be proven by either direct or circumstantial evidence. *Vergara*, 687 F.2d at 61. Constructive possession exists when the defendant has ownership, dominion and control over the contraband itself, or dominion and control over the vehicle in which it was concealed. *United States v. Richardson*, 848 F.2d 509, 512 (5th Cir.1988). Knowledge of the presence of contraband may ordinarily be inferred from the exercise of

control over the vehicle in which it is concealed, but we also look for additional factors and circumstances evidencing a consciousness of guilt on the part of the defendant. *Id.* at 513. Finally, the intent to distribute a controlled substance may generally be inferred solely from possession of a large amount of the substance. *United States v. Romero–Reyna,* 867 F.2d 834, 836 (5th Cir.1989).

The district court accepted the fact that Garcia knew or was told the Bronco contained marijuana. That he knew of the marijuana also allows the inference of an intent to distribute, as that marijuana added up to over two hundred pounds. However, the evidence in itself was insufficient to support a finding that Garcia possessed this contraband. Garcia never actually possessed the marijuana. Neither did he exercise constructive possession over it. The marijuana was not his, he never saw it, and he had no power to control its movement or subsequent distribution. Nor did he have dominion or control over the Bronco in which it was concealed or the lot on which the Bronco was parked. Pacheco did not leave him the keys to the vehicle. Government surveillance did not establish that Garcia was ever in or around the Bronco. Once parked in the apartment lot, which did not belong to Garcia, it was never moved prior to its seizure by authorities. These facts present no substantial evidence of possession, actual or constructive.

■■■■ However, Garcia's conviction on the substantive possession offense must be viewed in light of his participation in the conspiracy. "[E]ach conspirator may be held criminally culpable for substantive offenses committed by the conspiracy of which he is a member while he is a member." *United States v. Basey,* 816 F.2d 980, 997 (5th Cir.1987). A party to a conspiracy may be held responsible for a substantive offense committed by a coconspirator in furtherance of the conspiracy, even if that party does not participate in or have any knowledge of the substantive offense. *Pinkerton v. United States,* 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489

(1946). Thus, a defendant is deemed guilty of substantive acts committed in furtherance of the conspiracy by any of his criminal partners once the conspiracy and the defendant's knowing participation therein has been established beyond a reasonable doubt. *United States v. Sullivan,* 578 F.2d 121, 122–23 (5th Cir.1978). "This principle has been repeatedly applied by this circuit in cases involving drug conspiracies and substantive drug violations." *United States v. Michel,* 588 F.2d 986, 999 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979).

■■■■ It was not disputed at Garcia's trial that the marijuana belonged to and was knowingly possessed by Pacheco with the intent to distribute it. We have affirmed the district court's conviction of Garcia for his role in the conspiracy with Pacheco. Based on *Pinkerton* and its progeny in this circuit, Garcia's conviction for the substantive possession offense must also be affirmed. The evidence is sufficient to support a finding of each element of the substantive offense by Garcia or by his coconspirator, Pacheco.

## C. Acceptance of Responsibility

■■■■ Garcia argues that he was denied a reduction in his offense conduct under the sentencing guideline for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. This guideline allows a decrease of two levels "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." *Id.* § 3E1.1(a). This reduction may be given regardless of whether the defendant pleads guilty or is found guilty following trial. *Id.* § 3E1.1(b). Because of the district court's unique position to evaluate a defendant's acceptance of responsibility, its conclusions in this regard are entitled to deference on review greater even than that accorded under the clearly erroneous standard. We will uphold the district court's determination under this guideline unless it is "without foundation." *United States v. Thomas,* 870 F.2d 174, 176 (5th Cir.1989).

■■■■ The application notes state, "This adjustment is not intended to apply to a

defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.* (n. 2). A reduction may be allowed following trial if the trial was for the purpose of testing the constitutionality of a statute or its applicability to the conduct at issue. *Id.* Garcia's trial here required the government to prove, not that the statute was constitutional or applicable, but that Garcia committed the acts for which he was indicted. Relief under this guideline is not available to Garcia.

Garcia did cooperate with the investigating authorities before and after his arrest. He allowed the search of his home. He gave information on the extent of his knowledge about Pacheco. Apparently he was willing to plead guilty before trial. The plea was rejected because it was against Garcia's counsel's advice. Garcia continued to maintain to counsel that he was innocent and lacked any knowledge of the marijuana transaction.

At sentencing, the district court expressed reservations about acceptance of responsibility. When the court denied this reduction, the following exchange between the court and Garcia's counsel occurred:

> COUNSEL: If he were ... if Defendant was to accept responsibility and say yes, he knew, would the Court allow him the two points for acceptance o[f] responsibility, and then for him to be available and let the Judge—let the Government move on Rule 35 later on?
>
> COURT: Well, I mean I've never seen that happen.... [T]o me it's not a question of saying I'll tell you anything you want to hear if you'll knock off some more points. It's a question that up to now, and I think that's where we are right now, his position is such that I don't think he's entitled to that. And I, frankly, feel uncomfortable for him to just parrot some words to me here and say now give me two more points.... I'm not really comfortable just having you stand right here and tell me that you have some story to tell me so that you can get two more points off. I—I'm just

not sure that I would feel that that's a well thought out or very sincere approach. I'd rather give you what I think is justified based on the record before me now. I mean after all, you've had a lot of time to think about it.

Garcia argues here that he was denied the reduction simply because he went to trial. In part this is true. Refusal to admit factual guilt, however, is inconsistent with acceptance of responsibility when such refusal is not based on a legal or technical defense. The court was convinced that Garcia had, in fact, failed to accept responsibility for his role in the offense up to the time of sentencing. This finding is entitled to very narrow review. We cannot say that the court's questioning of Garcia's sincerity at the eleventh hour was "without foundation." Its ruling was not clearly erroneous. *See Thomas,* 870 F.2d at 176.

■■■ Garcia argues for a four-level reduction for being a "minimal participant." U.S.S.G. § 3B1.2(a). The district court allowed a two-level reduction for his being a "minor participant." *Id.* § 3B1.2(b). A finding that a defendant does not qualify for minimal or minor participant reduction is fact-dependent and will be upheld unless clearly erroneous. *Thomas,* 870 F.2d at 177. The court's statement of its conclusion under this guideline suffices as a factual finding. *United States v. Gallegos,* 868 F.2d 711, 713 (5th Cir.1989). After directly addressing this guideline, the district court determined Garcia was a minor, but not minimal, participant. This conclusion was not clearly erroneous.

### III.

The judgment of the district court is AFFIRMED.