**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Carlos SACERIO and Narciso Roberto Rubio, Defendants–Appellants.**

**No. 90–1637.**

United States Court of Appeals,
Fifth Circuit.

Jan. 22, 1992.

---

Betsy Walker, Biloxi, Miss. (Court-appointed), for defendants-appellants.

Martha Carson, D'Iberville, Miss. (Court-appointed), for Rubio.

Peter Barrett, Asst. U.S. Atty., George Phillips, U.S. Atty., Biloxi, Miss., for plaintiff-appellee.

Before GOLDBERG, JOLLY, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

I

Carlos Sacerio and Narciso Roberto Rubio appeal their convictions on one count of conspiracy to possess cocaine with the intent to distribute and one count of posses-

sion of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. We reverse.

## II

Rubio worked at a car wash in Miami. Juan Castellanos, a regular customer at the car wash, asked Rubio to drive a car from Miami to New Orleans for $200.00 plus expenses. Rubio was to deliver the car to Luis Martinez in New Orleans. As Rubio was driving a white Ford Tempo from New Orleans to Miami on I–10 in Gulfport, Mississippi, Mississippi Highway Patrol Officer Potts stopped him for speeding. Rubio gave Potts his license and the rental car agreement with Hertz, showing that the car had been rented to Castellanos. Martinez was listed as an additional authorized driver. Officer Potts questioned Rubio in English and Rubio responded in English with no signs of difficulty. Potts ran a check on Rubio's license and found that it was suspended.

Potts phoned Hertz, who told him to impound the car. Rubio consented to a search of the car and followed Potts to the Sheriff's Department where the car was put on a rack for inspection. A thorough search failed to show anything. Apparently Rubio was not concerned because he fell asleep during the search.

Potts took Rubio to the bus station in Gulfport so he could get transportation back to Miami. Potts then called Hertz and asked that anybody calling about the car be referred to him. The next day Potts got a message that someone had called about the impounded Tempo. Potts returned to the Tempo, searched it again, and found one kilo of cocaine concealed under the dashboard of the car. Potts contacted the Mississippi Bureau of Narcotics, who then contacted the Drug Enforcement Agency (DEA). DEA agent Delgado searched the car and found another kilo of cocaine concealed under the dashboard.

According to Rubio's testimony, after Potts dropped him off at the bus station, he called Martinez, who told Rubio that he should continue to New Orleans and that he would try to solve Rubio's problem.

Rubio also called his sister and asked her to call some of his friends to help him with his problem. Sacerio, one of Rubio's friends, called Rubio at the bus station and agreed to meet him in New Orleans. Sacerio flew to New Orleans, leaving his car at the Miami airport, and rented room 615 at the Howard Johnson Motel in Kenner, Louisiana. Both Rubio and Sacerio occupied the room.

Sacerio arranged for a call to be made to Armando Baralt, an attorney and the brother of a friend of Sacerio's. Baralt returned the call and he testified that he thought he talked to Martinez. Baralt met with Rubio, Sacerio, and Martinez in room 615 to discuss getting the Tempo released. Baralt called Potts using a fictitious name, Lee Collins, and asked him how to obtain the car. Potts told Baralt to contact Hertz at the Gulfport airport to make arrangements for retrieving the car. Baralt called Hertz and they informed him the car would have to be released to an authorized driver.

Baralt, Martinez, and Juan Peinado drove to the Gulfport airport in Baralt's vehicle, followed by Sacerio and Rubio, who were using Peinado's truck. Baralt, Martinez, and Peinado went to the Hertz counter to claim the car and were arrested shortly thereafter. Baralt informed the arresting officers that two more were coming in a truck. Rubio and Sacerio were arrested when they arrived, forty-five minutes later.

A key to room 615 was found in Sacerio's pocket and Sacerio consented to a search of the room. In room 615, the agents found less than a gram of cocaine in a bag in a drawer by the bed, a piece of paper with the directions to the Gulfport airport, a map with an "X" by Miami and Hialeah, and a menu with Rubio family names scribbled on the back.

At trial, Rubio testified that he did not know about the two kilograms of cocaine, that he was paid to drive the car to Miami by someone he did not know well, that he spoke little English and that he suffered a head trauma. Sacerio did not testify at trial.

■ Rubio and Sacerio were indicted along with Peinado, Martinez and Baralt. They were charged with conspiracy to possess cocaine with the intent to distribute it and possession of cocaine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and § 846. Rubio, Sacerio, Peinado, and Baralt were tried together. The jury found Rubio, Sacerio, and Peinado guilty on both counts and acquitted Baralt. Sacerio filed a timely appeal. We conclude that Rubio also filed a timely appeal.[1] Peinado has not appealed.

### III

Rubio and Sacerio raise several issues on appeal. First, there is insufficient evidence to support a conviction on either count. Second, the district court erred in admitting evidence of Peinado's subsequent drug transactions, contrary to Fed.R.Evid. 404(b) and 403. Third, the district court erred in admitting the hearsay testimony of Baralt. Fourth, the district court erred in denying defendants' motions for severance of the trial. Fifth, the district court erred in denying defendants' motions for a new trial and acquittal.

### A. Sufficiency of the Evidence

#### 1) Conspiracy

■ In reviewing an appeal based on the insufficiency of the evidence, the evidence and all reasonable inferences that may be drawn from it must be viewed in the light most favorable to the verdict. *United States v. Lechuga*, 888 F.2d 1472, 1476 (5th Cir.1989). The evidence is sufficient to sustain the verdict if a reasonable trier of fact could have found that the government proved all of the essential elements of the

crime beyond a reasonable doubt. *Id.* The government must prove that the defendants were guilty beyond a reasonable doubt, not merely that they could have been guilty. *See United States v. Littrell*, 574 F.2d 828, 832 (5th Cir.1978). Reviewing the evidence, and the inferences therefrom, in the light most favorable to support the verdict, we cannot say that no "innocent inferences remain." *United States v. Gutierrez*, 559 F.2d 1278, 1281 n. 5 (5th Cir.1977). Although some of the circumstances are suspicious, mere suspicion cannot support a verdict of guilty. *See United States v. Jackson*, 700 F.2d 181, 185 (5th Cir.), *cert. denied*, 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983); *United States v. Palacios*, 556 F.2d 1359, 1365 (5th Cir. 1977).

■ In order to prove conspiracy to possess and distribute cocaine, the government must prove: (1) the existence of an agreement between two or more persons; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the conspiracy. *Lechuga*, 888 F.2d at 1476. "It is not enough that the defendant merely associated with those participating in a conspiracy, nor is it enough that the evidence places the defendant in a climate of activity that reeks of something foul." *United States v. Galvan*, 693 F.2d 417, 419 (5th Cir.1982) (citations omitted).

Both Rubio and Sacerio contend that there is not enough evidence to prove they knew of the conspiracy and voluntarily participated in it. The government responds that the evidence shows that Rubio and Sacerio were the primary actors in the conspiracy. It points to the following evi-

1. The government argues that Rubio failed to file a notice of appeal within the governing time period because his notice of appeal was filed eleven days after the order denying the motion for a new trial. *See* Fed.R.App.P. 4(b). Rubio did, however, file a motion for appointment of counsel on appeal before entry of the judgment. A notice of appeal filed after sentencing but before entry of judgment is treated as timely filed on the day of entry of judgment. *See* Fed.R.App.P. 4(b). Rule 3(c) states that the notice of appeal "shall specify the party or parties taking the appeal; shall designate the judgment,

order, or part thereof appealed from; and shall name the court to which the appeal is taken." We find that Rubio's motion for appointment of counsel, together with the district court orders of September 26, 1990 and October 3, 1990, satisfy the spirit of Fed.R.App.P. 3(c). *See Page v. DeLaune*, 837 F.2d 233, 236–37 (5th Cir.1988); *Cobb v. Lewis*, 488 F.2d 41, 45 (5th Cir.1974). Rubio's motion and the court's orders clearly "evince[ ] [his] intent to appeal" and "did not mislead or prejudice" the government. *Cobb*, 488 F.2d at 45; *Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962).

dence: Rubio drove the car containing two kilograms of cocaine; Rubio called Sacerio for assistance, which Sacerio offered by flying to New Orleans; Rubio and Sacerio returned with co-defendants to retrieve the car, driving Peinado's truck; Sacerio had rented a hotel room, the key to which was found on his person when arrested; the phone calls to Potts and Hertz were placed from this hotel room; and a bag containing cocaine was found in the room. Although this evidence raises suspicions of guilt, it does not prove guilt beyond a reasonable doubt.

■ The government failed to prove beyond a reasonable doubt that Rubio was aware of the cocaine when he agreed to drive the Tempo. It took three searches by law enforcement agents to discover the cocaine. Both Potts and Delgado testified that they had no reason to believe that Rubio knew there was any cocaine in the vehicle. Rubio fell asleep during the first search, conduct normally not attributed to a person potentially facing arrest. Sacerio's actions are consistent with those of a friend, albeit a good friend, helping another friend out of a jam. That jam could well have been the impoundment of a car that Rubio was entrusted to deliver to New Orleans. The evidence, circumstantial and direct, does not show that either Rubio or Sacerio knew that the Tempo contained drugs. *See United States v. Onick*, 889 F.2d 1425, 1432 (5th Cir.1989).

The phone calls made by Baralt from Sacerio's room are also consistent with a person's attempts to retrieve a car. Baralt and Hertz discussed the potentially high drop off charges that would result if the car were not returned to the Florida rental location. The specific contents of the telephone conversations do not involve drugs, either directly or through code names. *See Galvan*, 693 F.2d at 420. Baralt's use of an alias, although suspicious, does not support a conclusion that Sacerio or Rubio knew of and voluntarily participated in a conspiracy to possess cocaine with the intent to distribute. Baralt testified that he used an alias because he was not licensed to practice law in Mississippi, he wanted to avoid the bias some people have towards people of Hispanic origin, and he was cautious about linking his name to "people traveling from Miami to Louisiana."

Rubio and Sacerio's mere presence at the airport and their association with those involved in a conspiracy are insufficient to uphold the verdict. *See United States v. Carrasco*, 830 F.2d 41, 45 (5th Cir.1987); *Gutierrez*, 559 F.2d at 1280–82. "No evidence, circumstantial or otherwise, establishes [their] knowledge ... of the contents of the [Tempo], or of the purpose" of retrieving the Tempo. *Carrasco*, 830 F.2d at 45. "Neither [their] association with those involved in the conspiracy nor [their] presence at the airport before and during the arrests is sufficient to sustain a conspiracy conviction." *Id.* "[M]ere association with other persons involved in a criminal enterprise is insufficient to prove participation in a conspiracy. Nor does proximity to the crime tip the balance. It is well established that even actual presence at the scene of the crime is not sufficient." *Gutierrez*, 559 F.2d at 1280–81 (citations omitted). This is not a case where the defendants' "presence and association are coupled with a total absence of rational, non-inculpatory explanations of fact." *United States v. Valdiosera–Godinez*, 932 F.2d 1093, 1096 (5th Cir.1991).

Finally, the bag of cocaine found in room 615 does not link either defendant to a conspiracy to possess cocaine with intent to distribute or establish any elements of the charged conspiracy. Sacerio's possession of one half a gram of cocaine alone does not prove that he knew of and voluntarily participated in this conspiracy to transport cocaine from Miami to New Orleans. This is especially true because there is no link between the cocaine found in room 615 and the cocaine found in the Tempo.

An analysis of the evidence against Rubio and Sacerio demonstrates that there is a plausible, rational, innocent explanation for almost every action, thus lending some reasonable doubt to an inference of guilt that may be drawn therefrom. Although the evidence may raise suspicions of non-innocent behavior in some instances, none

of the evidence proves guilt beyond a reasonable doubt that Rubio and Sacerio were knowing conspirators who voluntarily participated in the charged conspiracy to traffic drugs between Miami and New Orleans. As the evidence pertains to Rubio, it is hardly suspicious that he received $200 to drive a car from Miami to New Orleans. Rubio's attitude and behavior after he was stopped and during the search indicate no awareness of any criminal activity at that time. His call to Martinez is reasonable because he was to deliver the now impounded Tempo to Martinez. His call to his sister to get assistance in and of itself is not suspicious. The fact that Rubio and Sacerio were friends can explain their sharing a room at the Howard Johnson's. Although Rubio's association with Martinez and Peinado in making the calls and returning to retrieve the car raise suspicions as to his knowledge by that time, it is insufficient alone to convict Rubio for knowing and voluntary participation in a conspiracy to possess cocaine with the intent to distribute. "[T]he government has done nothing more than to place [him] in some very bad company." *United States v. Gomez*, 776 F.2d 542, 549 (5th Cir.1985).

■ The incriminating evidence against Sacerio is similarly insufficient. His friendship with Rubio is not suspicious. Flying to New Orleans to help a friend, at that friend's request, is not suspicious, especially if that friend thought he may be in trouble either with the law or his employer. Certainly no evidence proves that Sacerio's presence in New Orleans resulted from his involvement in transporting drugs from Miami to New Orleans. Calling Baralt is consistent with lawful behavior to seek advice of an attorney regarding the release of an impounded car. The phone calls made from Sacerio's room are more problematical regarding his knowledge about the conspiracy; however, as stated above, the content of those conversations does not directly, or through code names, concern drugs. Baralt's use of an alias, although suspicious, does not support a conviction that Sacerio knew of and voluntarily participated in a conspiracy to possess cocaine with the intent to distribute. The contents found in room 615, except for the cocaine, do not raise suspicions of wrong doing. The menu with Rubio's family names doodled on it is consistent with Sacerio being a friend of the family. The map with an "X" at Hialeah and Miami is not suspicious considering Sacerio is a resident of Florida. The one-half gram of cocaine, although plain evidence of criminal activity, does not establish that Sacerio knew of or voluntarily participated in the charged conspiracy to possess cocaine with the intent to distribute. Although by the time Sacerio accompanied Rubio to the Gulfport airport, it is reasonable to assume that Sacerio knew something more than retrieving an impounded car was involved, indeed, that criminal activity was afoot, this knowledge is insufficient to establish beyond a reasonable doubt that Sacerio had become a willing conspirator in the charged conspiracy. Although Sacerio may have suspected criminal activity, the evidence does not show beyond a reasonable doubt that he knew of an agreement to possess cocaine with the intent to distribute or that he voluntarily participated in such an agreement.

In short, the evidence establishes that Rubio received $200 to drive a car from Miami to New Orleans; after three searches the police retrieved two kilograms of cocaine from underneath the dashboard of the car; when the car was impounded, Rubio called first Martinez in New Orleans, who told him to continue to New Orleans, and second a good friend to assist him; Sacerio, a good friend, flew to New Orleans to assist Rubio; Sacerio called Baralt, an attorney and brother of a friend, to assist in retrieving the impounded car; the telephone conversations that took place in Sacerio's hotel room involved only retrieving the impounded car; Rubio and Sacerio, along with Martinez, Peinado, and Baralt, went to the airport where the car was located; the police found less than one gram of cocaine in Sacerio's hotel room. Thus, given the explanations supporting innocence as regards most of these activities, and given the absence of evidence indicating that either of the defendants knew of or voluntarily joined in the

charged conspiracy, we hold that a rational jury could not have found beyond a reasonable doubt that Rubio and Sacerio voluntarily joined and were a part of the charged conspiracy.

2) Possession

 In order to prove possession of cocaine with the intent to distribute it, the government must prove beyond a reasonable doubt that the defendant knowingly possessed the cocaine with the intent to distribute it. *United States v. Garcia*, 917 F.2d 1370, 1376 (5th Cir.1990). "Constructive possession exists when the defendant has ownership, dominion and control over the contraband itself, or the vehicle in which it was concealed." *Id.* Rubio argues that he did not have knowing possession. Sacerio argues that he did not have constructive possession because he did not have any dominion or control over the Tempo.

The government relies on the same evidence presented above. The evidence is insufficient to prove Rubio knew the cocaine was in the car. *See Littrell*, 574 F.2d at 834–35. Rubio's conduct after Potts stopped him does not give rise to inferences of a guilty mind. He did not act nervously, the car was not in his name, and he had not been in possession for very long. *See United States v. McDonald*, 905 F.2d 871, 874 (5th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 566, 112 L.Ed.2d 572 (1990).

The case against Sacerio also is insufficient. If Sacerio had possession, it must have been constructive because he never had actual possession of the Tempo or the cocaine. The evidence does not establish that Sacerio ever exercised dominion or control over either the cocaine or the Tempo.

 A party to a conspiracy, however, may be held responsible for a substantive offense committed in furtherance of the conspiracy, even if that party has no knowledge of the substantive offense. *Garcia*, 917 F.2d at 1377 (citing *Pinkerton v. U.S.*, 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946)). In order to uphold the conviction for possession then, there must

be sufficient evidence to support the conviction for conspiracy. As stated above, the evidence is not sufficient.

*B. Evidentiary and Procedural Issues*

We need not address the remaining issues on appeal because we reverse the convictions for insufficient evidence on both counts.

### IV

The judgment of the district court is REVERSED.