**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 91-8414

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

AMADO RIGOBERTO ROSAS-FUENTES,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Texas

(August 19, 1992)

Before GOLDBERG, JONES and DEMOSS, Circuit Judges

DEMOSS, Circuit Judge:

Appellant, Amado Rigoberto Rosas-Fuentes (Rosas) and his companion, Santiago Valdez (Valdez) were charged in a two-count indictment with (1) conspiracy to possess with intent to distribute more than 20 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and (2) possession with intent to distribute more than 20 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1). Valdez pleaded guilty. Following a bench trial, the court found Rosas guilty of both counts. The court sentenced Rosas to 33 months imprisonment and 3 years of supervised release on each

count to be served concurrently.  In this appeal, Rosas complains, among other things, that the evidence is insufficient to support his conviction.  After thorough review of the record, we find that there is insufficient evidence to support Rosas' conviction and, therefore, do not reach Rosas' other contentions.

## FACTS

On October 17, 1990, Valdez and his passenger, Rosas, arrived at the U.S. Border Patrol checkpoint in Eagle Pass, Texas, in a pickup truck.  Border Patrol Agent Ronald Marcell (Marcell) asked them whether they were United States citizens.  Valdez responded that they had to go back to Eagle Pass because Rosas had forgotten his identification "card" and his wallet.  Both Valdez and Rosas said that they were born in Eagle Pass.  When asked about their destination, Rosas told Marcell that Valdez was giving him a ride to Carrizo Springs to meet someone who could tell him where in San Antonio he could find a certain car part.  Valdez was then going to drop him off in San Antonio to purchase the part.  At trial, Valdez admitted that he was travelling to Ft. Worth.  Because both men appeared nervous and anxious to leave the checkpoint, Marcell referred them to the secondary inspection area.

Border Patrol Agents Mendoza and Santini handled the secondary inspection.  Mendoza asked for and received Valdez' consent to search the vehicle.  The agent noticed a gap between the bed of the truck and the cab.  In the space, the agent saw two gasoline tanks, one that was dirty and one that was clean.  Agent Mendoza then tapped the tanks, and the extra tank did not make the usual hollow

2

sound. Mendoza crawled under the truck and observed that the extra tank was inadequately secured with loose bolts that had tool marks on them, as if the tank had been recently removed and replaced. Agent Santini then used a piece of wire and ran it down the filler line of the tank. The wire met an obstruction about 12 inches down the line. Agent Marcell joined the search and loosened the filler line under the truck. He inserted his pen, which immediately met a solid obstruction. At that time, the agents were fairly certain that the tank contained some type of illegal contraband. During the search at secondary, Agent Santini testified that Rosas asked several times if they had found anything. Record Vol. 3 at p. 74.

Marcell testified that he arrested Rosas and Valdez and advised them of their <u>Miranda</u> rights while still at the checkpoint. Marcell then transported Rosas alone to the Border Patrol Station in El Paso. Marcell said that on the way to the Station, Rosas asked him in Spanish if they had found anything in the tank. Marcell responded in Spanish, "'Well, you tell me.'" Rosas' response was, "'Well, yes.'" Record Vol. 3, at p. 46. All of the agents testified that both men appeared nervous, that is, with their hands in their pockets, heads down, making no eye contact with the agents. Agent Mendoza testified that in the past he had seen Rosas go through this checkpoint, and his demeanor had been "pretty bold" in contrast to this day. Record Vol. 3, at p. 11.

At the Station, the agents removed the spare tank and saw that someone had cut open the upper part of the tank and closed it with duct tape. Inside the tank they found 24 packages of

3

marijuana, weighing 21,321 kilograms or about 53 pounds.

STANDARD OF REVIEW

The government argues that the defendant failed to renew his motion for acquittal at the close of all of the evidence, therefore, he waived his sufficiency review on appeal. The government contends that we should reverse only for plain error or "manifest miscarriage of justice." U.S. v. Ruiz, 860 F.2d 615, 617 (5th Cir. 1988). This standard applies, however, only when the defendant fails to move for acquittal at the end of a jury trial. Rosas had a bench trial, and his plea of not guilty serves as a motion for acquittal, therefore, error is preserved. U.S. v. Pitts, 428 F.2d 534, 535 (5th Cir.), cert. denied, 400 U.S. 910, 91 S.Ct. 154, 27 L.Ed.2d 149 (1970), citing, Hall v. U.S., 286 F.2d 676 (5th Cir.), cert. denied, 366 U.S. 910, 81 S.Ct. 1087, 6 L.Ed.2d 236 (1961).

When a jury trial has been waived and a bench trial held we must

> determine whether [the] findings are supported by any substantial evidence. It is not [our] function to make credibility choices or to pass upon the weight of the evidence. The test is whether the evidence is sufficient to justify the trial judge, as trier of the facts, in concluding beyond a reasonable doubt that the defendant was guilty. . . .

United States v. Jennings, 726 F.2d 189, 190 (5th Cir. 1984) (quoting, Gordon v. United States, 438 F.2d 858, 868 n. 30 (5th Cir.), cert. denied, 404 U.S. 828, 92 S.Ct. 139, 30 L.Ed.2d 56 (1971). When reviewing the sufficiency of the evidence to support a conviction, we view the facts and all reasonable inferences

4

therefrom in the light most favorable to the Government. <u>U.S. v. Garcia</u>, 917 F.2d 1370, 1376 (5th Cir. 1990).

SUFFICIENCY OF THE EVIDENCE

The elements of conspiracy are as follows: (1) the existence of an agreement between two or more persons to violate the narcotics laws, (2) knowledge of the conspiracy, and (3) voluntary participation in the conspiracy. <u>U.S. v. Arzola-Amaya</u>, 867 F.2d 1504, 1511 (5th Cir.), <u>cert. denied</u>, 493 U.S. 933, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). In <u>U.S. v. Blessing</u>, 727 F.2d 353, 355 (5th Cir.), <u>cert. denied sub nom.</u>, <u>Rodriquez v. U.S.</u>, 469 U.S. 1105, 105 S.Ct. 777, 83 L.Ed.2d 773 (1985), this court stated,

> [t]he government must show beyond a reasonable doubt that the defendant had the deliberate, knowing, and specific intent to join the conspiracy. . . . this court will not 'lightly infer a defendant's knowledge and acquiescence in a conspiracy.' It is not enough that the defendant merely associated with those participating in a conspiracy, nor is it enough that the evidence places the defendant in 'a climate of activity that reeks of something foul.' (citations omitted)

To sustain a conviction for possession with intent to distribute, the government must show that the defendant knowingly possessed the contraband with intent to distribute it. <u>U.S. v. Molinar-Apodaca</u>, 889 F.2d 1417, 1423 (5th Cir. 1989). The government may prove actual or constructive possession by either direct or circumstantial evidence. <u>Ruiz</u>, 860 F.2d at 619. To show constructive possession, the government must show that the defendant controlled, or had the power to control, the vehicle or the contraband; mere proximity to the contraband is not enough. <u>U.S. v. Moreno-Hinojosa</u>, 804 F.2d 845, 847 (5th Cir. 1986). Intent

5

to distribute may be inferred from the possession of a large quantity of narcotics, street value of the narcotics and/or purity of the narcotics.  U.S. v. Pilgrum, 922 F.2d 249, 254 (5th Cir.), cert. denied sub nom., Allen v. U.S., ___ U.S. ___, 111 S.Ct. 2064, 114 L.Ed.2d 468, 59 U.S.L.W. 3782 (1991).

The district court concluded that the evidence was insufficient to support a finding that Rosas actually or constructively possessed the marijuana.  We agree that no evidence showed that Rosas had any power to control the marijuana and its movement and distribution, nor was there any evidence that he had any power to control the truck in which it was concealed.  However, the district court convicted Rosas of possession because he participated in the conspiracy.  In so holding, the court followed the rule that it may hold each conspirator criminally culpable for substantive offenses committed by the conspiracy of which he is a member, while he is a member.  Garcia, 917 F.2d at 1377; Pinkerton v. U.S., 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946).  The government's case, therefore, turns on whether the evidence sufficiently proves that Rosas was part of a conspiracy.

The government argues that the district court had sufficient evidence before it to hold that Rosas was part of a conspiracy to possess with intent to distribute marijuana.  The government, however, presented very limited evidence linking Rosas to a conspiracy.  This evidence consisted primarily of Rosas' statement to Marcell, his nervous demeanor at the checkpoint and his implausible explanation for riding to Carrizo Springs and San

Antonio with Valdez, who admittedly was delivering a load of marijuana to Ft. Worth. The district court found that Rosas' statement showed that he knew that a controlled substance was in the tank. However, we do not agree that this statement proves knowledge of the marijuana. It could have been just as reasonable to infer from this statement that Rosas was admitting the obvious, that the agents must have found something or else they would not have arrested them.

In addition, the district court found unbelievable Valdez' and Rosas' story that they were going to Carrizo Springs to meet Rosas' unnamed friend for directions and then to San Antonio for a car part. The court questioned whether Valdez would risk losing a large load of marijuana with a street value of $53,000 to do a favor for an unknowing acquaintance and speculated that Carrizo Springs and San Antonio would not be part of a direct route to Fort Worth. The trial judge found little to believe in Rosas' or Valdez' testimony, but in our view, the government did not sustain its burden of proving Rosas' knowledge of the conspiracy.

In rendering his decision, the trial judge relied primarily on U.S. v. Garcia, 917 F.2d 1370 (5th Cir. 1990), where Garcia was convicted of conspiracy with intent to distribute marijuana on evidence that he guarded a truck knowing it contained marijuana. Unlike this case, the Garcia court heard testimony from a government informant saying that he overheard a conversation in which the owner of the truck, Pacheco, told Garcia that the truck contained marijuana. No such evidence of knowledge exists here.

7

Likewise, in Garcia, there was evidence that Pacheco paid Garcia $200 to watch the truck. The existence of some sort of agreement between Pacheco and Garcia regarding the truck and its contents was clearly established, and the dispute was over whether Garcia knew the truck contained marijuana. There is no such evidence from which we can infer an agreement between Valdez and Rosas. In fact, Valdez denied that Rosas was a participant in any conspiracy and that Rosas had any knowledge of the marijuana.

Based on our review of the evidence, we hold that no trier of fact could have justifiably found beyond a reasonable doubt that Rosas knew of the marijuana and thus participated in the conspiracy. See also, U.S. v. Gardea Carrasco, 830 F.2d 41, 45 (5th Cir. 1987) (reversing conviction of defendant who loaded suitcases containing marijuana onto an airplane but was not privy to conversations concerning the conspiracy or the contents of the suitcases); U.S. v. Jackson, 700 F.2d 181, 185-86 (5th Cir. 1983) (reversing conviction of defendant who was present when the conspirators were exchanging money for drugs because insufficient evidence was presented to show defendant's presence when the conspiracy was discussed or his knowledge of the "nature or purpose of the meeting, or even that a large amount of money was present. . . . ").

We agree with the district court that the evidence of Rosas' possession of the marijuana is clearly insufficient. We also agree that Rosas' conviction for possession could rest only upon his participation in the conspiracy under the Pinkerton rule. A

reversal of the conspiracy conviction causes the possession conviction to fall.  We, therefore, REVERSE and RENDER judgment of acquittal on both the conspiracy and the substantive possession counts.