**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 92-2947
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee
Appellant-Cross-Appellant,

VERSUS


CALVIN BROWN AND
BRENDA BROWN THURMAN,

Defendants-Appellants
Cross-Appellees,

and

JULIO CASTRO,

Defendant-Appellant,

CONSTANCE DIANNE HENDRIEX,

Defendant-Appellee.


_____

Appeals from the United States District Court
for the Southern District of Texas
_____
(August 10, 1994)

Before WISDOM, DAVIS and DUHÉ, Circuit Judges.

DAVIS, Circuit Judge:

Appellants Julio Castro, Brenda Brown Thurman and Calvin Brown appeal their convictions on drug trafficking charges.  Castro also appeals his sentence.  The government appeals the sentences imposed against Thurman and Brown, as well as against defendant Constance Dianne Hendriex.  For the reasons that follow, we affirm each of the challenged convictions, we affirm the sentence imposed against

Castro, and we vacate the sentences imposed against Thurman, Brown and Hendriex.

                                    I.

In February 1992, fourteen defendants were charged in a two-count indictment.  Count one charged the defendants with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846.  Count 2 charged the defendants with aiding and abetting the possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2.  The appeals relating to four of the fourteen defendants -- Brown, Thurman, Hendriex and Castro -- have been consolidated for presentation to this panel.

Castro's trial was severed and he was tried separately.  The court granted Castro's motion to dismiss count one of the indictment on grounds that the conspiracy charge subjected Castro to double jeopardy because of a prior conspiracy prosecution in New York.  Castro was then tried and convicted on count two.

Brown, Thurman and Hendriex were tried together.  At the close of the government's case, the court granted Thurman's and Hendriex's motions for judgment of acquittal on count two.  The jury found Thurman and Hendriex guilty on count one, and Brown guilty on both counts.  The court entered judgments of conviction on this verdict.

Juan Mora, an unindicted co-conspirator, was the government's principal witness against Thurman, Hendriex and Brown.  Mora described in detail his management and supervision over a distribution network for cocaine shipped from Columbia to the

                                    2

United States. Mora based his operations in Miami, but was responsible for receiving shipments at various locations throughout the United States. Mora hired Jesus Alberto Valencia and his wife Alfreida Brown Valencia,[1] to transport some of the cocaine to various points throughout the United States. Mora explained that the Valencias employed numerous drivers, among them Brown, Thurman and Hendriex. Mora would pay the Valencias for each "trip," and the Valencias in turn would distribute a portion of that fee to the drivers in their organization.

Mora testified that the Valencias were responsible for supervising the receipt, transportation and delivery of cocaine to Mora's workers in New York. Jesus Valencia would personally meet the loads in New York and orchestrate the transfer from the drivers in his organization to the distribution networkers. Julio Castro and Wilson O'Havaro managed the distribution operation in New York.

Mora also testified that Brown and Hendriex participated in numerous drug smuggling trips, usually between California and New York, New York and Miami, and New York and Houston. Mora stated that Brown had been described by the Valencias as "one of the biggest drug drivers in the United States."

Mora also testified that in September 1990, Thurman and Douglas Medlock, another Valencia driver, flew to Ontario, California and drove a mini-van to the east coast with a hidden load of cocaine. Mora estimated that the vehicle contained between 40 and 60 kilograms of cocaine.

---

[1] Jesus Alberto Valencia and Alfreida Brown Valencia were also charged in the indictment. When this case was briefed, both were fugitives.

3

Mora also testified that he often contacted Thurman regarding organization business via cellular telephone if the Valencias were unavailable. A search of Thurman's residence produced a cellular telephone, whose number had been used on many occasions in connection with Valencia activities.

Walter Perkins[2], another member of the Valencia drug smuggling organization, testified that he had made six to eight trips for the Valencias, one with Hendriex. He testified that although he did not know the precise location of the hidden compartments, he knew that he was transporting drugs or drug proceeds on each trip. He testified that a trip would initiate with a phone call from either Jesus or Alfreida, who would instruct him to contact Thurman to obtain travel money. He testified that Thurman had provided him $800-$4500 for travel expenses on several occasions.

Joyce Medlock, another organization driver, testified that in late 1988 or early 1989, she and Brown had knowingly driven a load of cocaine for the organization. She also explained that she performed the function of a switchboard operator for the Valencia organization by apprising Alfreida Valencia of the status and location of organization drivers.

At Castro's trial, Mora explained that Castro was a salaried organization employee involved in Mora's New York City distribution operation. Castro would receive cocaine deliveries from organization drivers, remove the cocaine from the hidden compartments and await direction from Mora about further

---

[2] Perkins was also charged in the indictment; he pled guilty in June 1992.

4

distribution.  Castro would then deliver the cocaine and accept payment for it.

## II. THE DEFENDANTS' APPEALS

## A. THE APPEAL OF JULIO CASTRO

### 1.

Castro argues first that the district court erred in using a prior conspiracy conviction in the Southern District of New York to enhance his sentence.  The district court relied on the earlier conviction to enhance Castro's sentence to the 20-year mandatory minimum under 21 U.S.C. § 841(b)(1)(a), which provides in pertinent part:

> If any person commits [a drug violation involving 5 kilograms or more of cocaine], after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment . . . which may not be less than 20 years and not more than life imprisonment.

Castro complains that the government initially prosecuted him for a conspiracy offense in the Southern District of New York for the purpose of enhancing his sentence on the substantive offense he was later tried for in the Southern District of Texas.  Stated differently, Castro argues that the government is prohibited from prosecuting a criminal conspiracy separately from the underlying substantive criminal offense for the purpose of obtaining a sentencing enhancement.

We find no merit to Castro's argument.  First, a substantive crime and a conspiracy to commit that crime are not the same offense for double jeopardy purposes. **United States v. Felix**, ___ U.S. ___, 112 S. Ct. 1377, 1385 (1992).  Also, the conspiracy prosecution in New York was based on a different transaction than

5

the instant offense. The New York conspiracy offense was related to Castro's involvement in a single substantive offense: transportation of five kilograms of cocaine in February 1991. The instant offense involved Castro's participation in transporting cocaine from Houston to New York in January 1991.

Castro's reliance on **Deal v. United States**, ___ U.S. ___, 113 S. Ct. 1993, 124 L. Ed. 2d 44 (1993) is misplaced. In **Deal**, the defendant was convicted of six counts of bank robbery, six counts of carrying and using a firearm in relation to the bank robbery and one count of being a felon in possession of a firearm. With respect to the firearm convictions, the district court applied 18 U.S.C. § 924(c)(1), which provides:

> Whoever, during and in relation to any crime of violence . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . ., be sentenced to imprisonment for five years . . .. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years . . ..

Pursuant to this provision, the district court sentenced the defendant to five years on the first firearms count and to twenty years on each of the other five firearms counts. The Court held that Deal's conviction on counts 2-6, although obtained in a single proceeding, arose "in the case of his second or subsequent conviction" within the meaning of § 924(c)(1). In other words, the Court held that Deal's conviction on the first count could be relied upon as a predicate to enhance the conviction on counts two through six. The Court's reasoning in **Deal** therefore provides no support to Castro's argument. The district court did not err in

6

using the earlier drug conspiracy conviction to enhance Castro's sentence.

2.

Castro argues next that the district court violated his Sixth Amendment right by restricting his cross-examination of Jeffrey Harbour, one of his co-conspirators who was a government witness. At trial, Castro's attorney asked Harbour on cross-examination "was your wife indicted on this case on the same . . ." The prosecutor objected on grounds of relevance and the court sustained the prosecutor's objection. Castro argues that his question regarding Dolly Harbour's indictment status was relevant to Harbour's motive for testifying, and thus, his credibility.

If Castro had tried to determine from Harbour whether the prosecutor had declined to prosecute Dolly as part of the consideration for Harbour's plea agreement, Castro's argument would have some weight. But he gave no signal to the district court that his objective was to raise this question. He simply asked whether Dolly had been indicted and did not follow up to give the district court a clear signal of the purpose of his question. The district court did not abuse its discretion in sustaining the objection.

3.

Finally, Castro complains that the district court made an indefinite finding on the quantity of drugs he could reasonably foresee that he and his co-conspirators were distributing. In the alternative, Castro argues that the court's finding on this question was clearly erroneous.

7

First, the district court complied with Fed. R. Crim. P. 32(c)(3)(D). At sentencing, the court stated: "The court adopts the factual statements contained in the Presentence Report as to which there were no objections, and as to the objection the Court has overruled those objections." We have recognized that a sentencing court may satisfy the requirements of Rule 32(c)(3)(D) by rejecting a defendant's objections and orally adopting the factual findings of the PSR. **See United States v. Puma**, 937 F.2d 151, 159-60 (5th Cir. 1991), **cert. denied**, ___ U.S. ___, 112 S. Ct. 1165 (1992).

The only remaining question, therefore, is whether the PSR's factual findings, which were adopted by the district court, are clearly erroneous. The PSR stated that Castro aided and abetted the transportation of more than 340 kilograms of cocaine. Castro disputes this amount by denying his knowledge of certain shipments. Castro claims actual participation in the shipment of only 148 kilograms of cocaine. However, Mora and Harbour testified to Castro's involvement with the shipments which Castro now disavows. The probation officer and the district court were entitled to rely on this testimony in attributing the amounts involved in those loads to Castro. We find no clear error in the district court's finding as to the quantity of drugs reasonably foreseeable to Castro.

B. THE APPEALS OF CALVIN BROWN AND BRENDA BROWN THURMAN

Both Brown and Thurman challenge the sufficiency of the evidence to support their convictions. Brown challenges the sufficiency of the evidence to support his conviction on counts one

and two, and Thurman challenges the evidence to support her conspiracy conviction on count one. For purposes of a sufficiency challenge, we view the evidence presented and all inferences reasonably drawn therefrom in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Glasser v. United States**, 315 U.S. 60, 80, 62 S. Ct. 457, 469 (1942).

Brown and Thurman were both convicted of conspiracy to possess cocaine with intent to distribute it, in violation of 21 U.S.C. § 846. Under § 846, the government must prove: 1) the existence of an agreement between two or more persons; 2) the defendant's knowledge of the agreement; and 3) the defendant's voluntary participation in the conspiracy. **United States v. Maltos**, 985 F.2d 743, 746 (5th Cir. 1992).

Brown and Thurman both argue that the government failed to prove that they knowingly participated in a conspiracy. We have recognized that a "jury may infer a conspiracy agreement from circumstantial evidence and may rely upon presence and association, along with other evidence, in finding that a conspiracy existed." **United States v. Robles-Pantoja**, 887 F.2d 1250, 1254 (5th Cir. 1989).

Brown was also convicted of aiding and abetting the possession of cocaine with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A). To support a conviction under § 841(a)(1), the government must prove beyond a reasonable doubt the 1) knowing; 2) possession of a controlled substance; 3) with the

9

intent to distribute it. **United States v. Sacerio**, 952 F.2d 860, 866 (citing **United States v. Garcia**, 917 F.2d 1370, 1376 (5th Cir. 1990)). Brown argues that the government failed to prove that he knowingly aided and abetted the possession of cocaine. Possession of contraband with intent to distribute it may be actual or constructive, and may be proven by circumstantial or direct evidence. **United States v. Lopez**, 979 F.2d 1024, 1031 (5th Cir. 1992); **United States v. Ojebode**, 957 F.2d at 1218, 1223 (5th Cir. 1992).

With these standards in mind, our review of the trial record leads us inescapably to the conclusion that the evidence is sufficient to support the challenged convictions. As for Brown, Mora testified that the Valencias described Brown as "one of the biggest drug drivers in the United States." Brown was identified by a number of witnesses as the driver of load vehicles delivering cocaine to New York.

Brown's sister, Joyce Medlock, testified to the standard procedures followed by all of the Valencia drivers, including Brown, in transporting a load of contraband. These procedures were clearly designed to conceal the drug smuggling operation. Relatedly, Medlock also stated that in late 1988 or early 1989, she had driven a load to New York with Brown. Moreover, before his arrest, Brown himself admitted to taking "trips" in vehicles, vehicles which were later established to be contraband smuggling vehicles of the Valencia organization. Joyce Medlock also testified that she and the other drivers, including Brown, knew that they were carrying contraband. The jury was clearly entitled

10

to conclude that Brown worked in concert with the Valencias and others to accomplish the objectives of the conspiracy and that Brown knowingly possessed cocaine with the intent to distribute it.

In the government's case against Thurman, Mora testified that he relied on Thurman to communicate with the other drivers regarding organization activity when the Valencias were unavailable. Mora and other drivers testified that Thurman distributed expense money to the drivers.

Douglas Medlock also implicated Thurman by testifying that he and Thurman drove a load of cocaine from California to New York after giving feigned excuses for their absence from work. Work records from Thurman's place of business corroborated Medlock's testimony. A search of Thurman's residence also produced a cellular telephone connected to Jesus Valencia, as well as vehicle registration papers for a vehicle utilized by the organization.

In sum, our review of the record satisfies us that the evidence amply supports Brown's convictions under both counts and Thurman's conspiracy conviction.

### III. THE GOVERNMENT'S APPEAL

The government argues that the district court erred in awarding downward departures to Brown, Thurman and Hendriex. For clarity, we will address each defendant's downward departure in turn.

### A. CALVIN BROWN

The PSR calculated Brown's criminal offense level at 36, with a criminal history category of I, translating to a punishment range of 188-235 months. The district court departed downwardly from the

applicable guideline range and imposed concurrent 120-month terms of imprisonment. The only reason the court gave for its departure was to "sentence the defendant to a term of incarceration consistent with other defendants who were more culpable but benefitted in sentencing by nature of their plea agreements."

A district court is authorized to depart downwardly from application of the sentencing guidelines when there exists "a[] . . . mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). This standard obviously limits the judge's discretion to depart from the applicable guideline ranges, and we review **de novo** the legal issue of whether a factor was permissibly relied on as a grounds for a departure. **United States v. Shano**, 955 F.2d 291, 294 (5th Cir.), cert. denied, ___ U.S. ___, 112 S. Ct. 1520 (1992).

We have held that a district court may not depart downwardly based solely on the disparity of sentences among co-defendants or co-conspirators. **United States v. Ives,** 984 F.2d 649, 651 (5th Cir. 1993); **see also United States v. Ellis**, 975 F.2d 1061, 1066 (4th Cir. 1992); **United States v. Wogan**, 938 F.2d 1446, 1448-49 (1st Cir. 1991); **United States v. Joyner**, 924 F.2d 454, 459-61 (2d Cir. 1991). In **Ives**, the defendant argued that the district court erred when it refused to depart downwardly to harmonize his sentence with the much shorter sentences imposed against equally culpable co-conspirators. **Id.** at 650. In rejecting the defendant's argument, we were persuaded by the "the clear trend . . . to hold that a district court may not under any circumstances

12

depart from a recommended Guidelines' sentence -- either upward or downward -- for the purpose of achieving parity or equity between co-defendants." **Id.**

Because we conclude that the district court impermissibly departed downwardly in sentencing Brown, we vacate his sentence and remand for resentencing. **See Williams v. United States**, ___ U.S. ___, 112 S. Ct. 1112, 117 L. Ed. 2d 341 (1992).

### B.   BRENDA BROWN THURMAN

At sentencing, the court found that Thurman participated in transporting 40 kilograms of cocaine. The district court, over the government's objection, then awarded Thurman a two-level reduction for minor participation; the court thereby arrived at a base offense level of 32, which, with a level I criminal history, resulted in a punishment range of 121-151 months. The district court, however, departed downwardly and sentenced Thurman to 120 months. Apparently, the one-month departure was intended to achieve harmony with Brown's sentence, whom the district court sentenced just before sentencing Thurman. For the reasons stated above, we must vacate Thurman's sentence because a sentencing court is not authorized to depart downwardly for the sole purpose of achieving consistency in sentencing among co-defendants.

We find permissible, however, the court's two-level reduction based on Thurman's minor participation. Under § 3B1.2(b), a district court must reduce an offense level by two if it finds that the defendant was a "minor participant" in the offense. A defendant is considered a minor participant if he or she is "substantially less culpable than the average participant." **United**

13

**States v. Lokey**, 945 F.2d 825, 840 (5th Cir. 1991). Whether Thurman played only a minor role in the conspiracy is a factual determination which must be upheld unless it is clearly erroneous. **United States v. Giraldo-Lara**, 919 F.2d 19, 22 (5th Cir. 1990).

The testimony at trial revealed that Thurman distributed travel money to organization drivers and that Thurman was a passenger in one of the drug smuggling vehicles. The district judge was entitled to conclude that Thurman was less culpable than most other participants in this large drug smuggling operation. We are persuaded that the district court did not commit clear error in concluding that Thurman was a minor participant.

### C.  CONSTANCE DIANNE HENDRIEX

The government also appeals the sentence imposed against Hendriex.[3] The district court limited Hendriex's role to 40 kilograms of cocaine and awarded her a two-level reduction for minor participation, arriving at a sentencing range of 121 - 151 months. Hendriex moved for a departure under § 5H1.6 because her two children were under 5 years old and were being cared for by their 65-year-old great-grandmother with limited financial resources. The district court accepted this argument, granted downward departure and sentenced Hendriex to 78 months imprisonment, which is below the statutory minimum of ten years.

The government argues first that the district court was without authority to impose a sentence below the statutory minimum because the government did not move for such relief.

---

[3]  Hendriex did not appeal her conviction or sentence.

A district court's authority to sentence below the statutory minimum is circumscribed by 18 U.S.C. § 3553(e), which provides:

> **Limited authority to impose a sentence below a statutory minimum.** -- <u>Upon motion of the Government</u>, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

18 U.S.C. § 3553(e)(emphasis added).

In this case, the government made no motion to depart below the statutory minimum sentence and thus, the district court exceeded its authority in sentencing Hendriex to a term below the statutory minimum. **See United States v. Vilchez**, 967 F.2d 1351, 1355-56 (9th Cir. 1992); **see also United States v. Schmeltzer**, 960 F.2d 405, 407-08 (5th Cir. 1992).

Aside from the departure below the statutory minimum, the district court justified its departure from the <u>guideline</u> range of 121-151 months on grounds that Hendriex had demonstrated "exceptional circumstances" within the meaning of § 5H1.6.  In granting the departure, the court stated:

> The Court will depart, based on Section 5H1.6, for the reason that the children, that is the children of Miss Hendriex, are fairly young, that is under five years for both, and for the further reason that the grand mother, that is the person who would be supporting these children, is 65 years old, and very well may find it difficult to support these children over an extended period of time.

Unless there are unique or extraordinary circumstances, a downward departure from the guideline range based on the defendant's parental responsibilities is improper. **See, e.g., United States v. Cacho**, 951 F.2d 308, 311 (11th Cir. 1992); **United States v. Goff**, 907 F.2d 1441, 1446 (4th Cir. 1990)(district

15

court's downward departure because defendant had three children who would be left with their grandmother was improper because "[t]here is nothing extraordinary about Goff's family responsibilities."); **see also** U.S.S.G § 5H1.6 commentary (Family ties and responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the guidelines.)

The record in this case reveals that Hendriex is the single parent of two young children who will be cared for by her grandmother during Hendriex's incarceration. Although the children have some undefined medical problems, the record discloses nothing extraordinary. Hendriex "has shown nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts . . . parental relationships." **United States v. Daly**, 883 F.2d 313, 319 (4th Cir. 1989), **cert. denied**, ___ U.S. ___, 110 S.Ct. 2622 (1990). We therefore find nothing "extraordinary" about Hendriex's parental responsibilities which would warrant a downward departure below a 121 month sentence, which is at the bottom of the applicable guideline range.

IV.

For the reasons stated above, we affirm the convictions of Castro, Brown and Thurman. We also affirm Castro's sentence. But we vacate the sentences imposed against Brown, Thurman and Hendriex which we remand for resentencing consistent with this opinion.

AFFIRMED in part; VACATED AND REMANDED in part.