**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**Nos. 95-50177,**
**97-50393 and 97-50407**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**JAMES MENDIOLA; ELSA MENDIOLA; JOSE L. CRUZ**

**Defendants-Appellants.**

---

**Appeal from the United States District Court**
**for the Western District of Texas**
**(SA-93-CR-191)**

---

**October 21, 1997**

Before REAVLEY, BARKSDALE, and STEWART, Circuit Judges.

PER CURIAM:[1]

James and Elsa Mendiola were convicted for conspiracy to manufacture and distribute marijuana; and, together with Jose Luis Cruz, for possession of marijuana with intent to distribute. We **AFFIRM** Nos. 95-50177 and 97-50407; **DISMISS** No. 97-50393.

I.

Between September 1992 and mid-1993, James Mendiola, Jerry Wolf and Francisco Figueroa (later, a key Government witness)

---

[1] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

engaged in an operation to grow and distribute high-quality marijuana. It was planted initially at the Mendiola residence in San Antonio, Texas, and then transported to, and replanted at, a ranch owned by Wolf and Mendiola in Rocksprings, Texas. Elsa Mendiola, the wife of James Mendiola, was involved in the operation and arranged with her sister for distribution in the Austin, Texas, area. Cruz worked as a laborer at the Rocksprings ranch, tending the marijuana growing operation. Approximately 800 marijuana plants were found growing on 24 June 1993 when search warrants were executed at the residence and the ranch.

The Mendiolas, Cruz, and Wolf were charged with conspiracy to manufacture marijuana with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and with possession of marijuana with intent to distribute, in violation of 21 U.S.C. 841(a)(1) and 18 U.S.C. § 2 (aiding and abetting). In mid-1994, a jury found the Mendiolas and Wolf guilty on both charges; Cruz, on the possession, but not the conspiracy, charge. (As discussed in our opinion in *United States v. Guerrero*, Nos. 95-50140 and 97-50401, rendered the same day as this opinion, shortly after the trial in this case, James Mendiola was tried and convicted for conspiracy and possession with intent to distribute other marijuana.)

In mid-1997, a new trial was denied the Mendiolas and Cruz.

II.

- 2 -

Wolf dismissed his appeal. The Mendiolas and Cruz raise a number of issues, including insufficient evidence to sustain their convictions, evidentiary and sentencing rulings, and the denial of a new trial. The Mendiolas also raise a double jeopardy claim; Cruz, the denial of his severance motion. Following the mid-1994 trial, sentencing and the initial appeal (No. 95-50177) were in 1995. But, while that appeal was pending, the new trial motion was not filed and denied until 1997. Pending that ruling, oral argument on the initial appeal was stayed. In the interim, one issue presented in the initial appeal was resolved, as discussed below.

### A.

The denial of Cruz's motion to sever is reviewed only for abuse of discretion. *See* ***Zafiro v. United States***, 506 U.S. 534, 541 (1993); ***United States v. Arzola-Amaya***, 867 F.2d 1504, 1516 (5th Cir.), *cert. denied*, 493 U.S. 933 (1989). For "conspiracy cases, the general rule is that persons indicted together should be tried together." ***United States v. Fields***, 72 F.3d 1200, 1215 (5th Cir.), *cert. denied,* ___ U.S. ___, 117 S. Ct. 48 (1996). "Severance is a matter left to the sound discretion of the trial court, and a defendant is not entitled to severance unless he can demonstrate specific compelling prejudice that actually results in his having received an unfair trial." ***United States v. Capote-Capote***, 946

F.2d 1100, 1104 (5th Cir. 1991), *cert. denied*, 504 U.S. 942 (1992); *see* FED. R. CRIM. P. 14.

Cruz contends that, as a result of the denial of his motion, inadmissible hearsay statements were admitted against him. It is difficult to determine from his brief exactly which statements he complains of, but they are apparently the telephonic intercepts of the co-defendants, which were admitted over his objection. He additionally appears to contend that, in relation to the denial of a severance and the admission of the intercepts, he was denied his Sixth Amendment right to confront the witnesses against him.

Along this line, Cruz maintains that, aside from the intercepts, there is little independent evidence implicating him for possession with intent to distribute. We disagree. In any event, a difference in the amount of evidence "is clearly insufficient in itself to justify severance." *United States v. Harrelson*, 754 F.2d 1153, 1175 (5th Cir.), *cert. denied*, 474 U.S. 1034 (1985).

Cruz's Sixth Amendment contention is also without merit. Severance is proper in such cases only where a defendant's statement directly incriminates his or her co-defendants without reference to other, admissible evidence. *United States v. Beaumont*, 972 F.2d 91, 95 (5th Cir. 1992). The statements of the co-defendants, which Cruz does not identify with any specificity, did not directly incriminate Cruz without reference to other

admissible evidence.  In fact, from our review of the record, none of the intercepts directly implicated Cruz.

Accordingly, Cruz does not demonstrate the requisite unfair trial.  Indeed, the jury found the Mendiolas guilty, but acquitted Cruz, on the conspiracy charge, reflecting that it considered the evidence separately as to each Appellant.

B.

The Mendiolas base their double jeopardy claim on the civil forfeiture proceeding concerning their home, restaurant, and other assets.  As held fairly recently, an *in rem* civil forfeiture is not a "punishment" subject to the Double Jeopardy Clause.  **United States v. Ursery**, ___ U.S. ___, 116 S. Ct. 2135, 2147 (1996). Instead, the  proceeding is "a remedial civil sanction, distinct from potentially punitive *in personam* civil penalties such as fines, and does not constitute a punishment under the Double Jeopardy Clause."  **Id.** at 2142.  In the light of **Ursery,** "[i]n rem civil forfeitures do not constitute 'punishment' for purposes of the Double Jeopardy Clause, but operate, merely to 'confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct.'" **United States v. Perez**, 110 F.3d 265, 267 (5th Cir. 1997).

C.

Testimony by Diane Reyes, a friend of Elsa Mendiola's sister, Mari Gaona, was admitted pursuant to FED. R. EVID. 801(d)(2)(E), as

- 5 -

"a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."  For such admission, the Government must establish by a preponderance of the evidence that the declarant and the defendant were involved in a conspiracy and that the statements were made during, and in furtherance of, the conspiracy.  *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  In determining whether a conspiracy exists, the district court is free to look at all evidence, including the putative hearsay statement.  *Id.* at 175-80.

The admission of Rule 801(d)(2)(E) evidence is reviewed for abuse of discretion.  *United States v. Triplett*, 922 F.2d 1174, 1181 (5th Cir.), *cert. denied,* 500 U.S. 945 (1991).  And, even if an abuse of discretion is found, the harmless error doctrine is applied.  *United States v. Skipper*, 74 F.3d 608, 612 (5th Cir. 1996).  Determinations that the statements were made by a co-conspirator and in furtherance of the conspiracy are reviewed only for clear error.  *United States v. Stephens*, 964 F.2d 424, 434 (5th Cir. 1992).  Needless to say, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985).

The Mendiolas contend that Reyes' testimony about Gaona's statements should not have been admitted because there is no independent evidence of a concert of action between them and Gaona.

They further contend that there was no evidence that they entered into a conspiracy with Gaona, and that the Government failed to prove that Gaona was a member of the conspiracy for which they were convicted. Cruz contends likewise that there was no independent evidence of either a concert of action between him and Gaona, or that Gaona was a member of a conspiracy that involved him. Moreover, Cruz contends also that there was no evidence that he was involved *in a conspiracy with Reyes* and that the *statements made by Reyes* were not made in furtherance of a conspiracy involving her and Cruz.

At trial, Appellants objected on several grounds, including that, as an unindicted co-conspirator, the statements made by Gaona were inadmissible. Counsel for Cruz objected on the basis that Reyes' testimony had nothing to do with Cruz. After lengthy argument, the district court overruled all objections and determined later that the Government had shown by a preponderance of the evidence that a conspiracy existed, that the defendants against whom the statements were offered were members of the conspiracy, and that the statements were made in furtherance of that conspiracy.

"Statements made by a non-testifying co-conspirator are admissible against the defendant if there is 'independent evidence of a concert of action' in which the defendant was a participant." *United States v. Asibor*, 109 F.3d 1023, 1033 (5th Cir.), *cert.*

*denied,* ___ U.S. ___, 1997 WL 525549 (Oct. 6, 1997). There was ample independent, non-hearsay evidence that Appellants were participants in the marijuana growing and distribution conspiracy and that Gaona was involved. Our focus for this challenge is whether the "government introduced sufficient independent evidence of the existence of a conspiracy, in which the defendant was a co-conspirator...." *United States v. Dawson*, 576 F.2d 656, 658 (5th Cir. 1978), *cert. denied,* 439 U.S. 1127 (1979). The record shows that a marijuana growing and distribution operation was run by James Mendiola and Wolf; that Cruz cared for the marijuana at the Rocksprings ranch; and that Elsa Mendiola was aware of the operation and assisted in the distribution with her sister, Gaona. Additionally, there was testimony from an FBI Agent who observed an exchange of a package believed to be marijuana between Gaona and Wolf. Accordingly, Appellants' challenge regarding lack of independent concert of action is meritless.

As noted, the Government's burden is to establish by a preponderance of the evidence that the declarant (Gaona) and the defendants were involved in a conspiracy and that the statements were made during, and in furtherance of, the conspiracy. *Bourjaily*, 483 U.S. at 175. As also noted, Appellants contend there was no evidence they entered into a conspiracy with Gaona, and that the Government failed to prove that she was a member of the conspiracy for which the Mendiolas were convicted. This

contention is without merit. There was independent evidence that Gaona was involved in a conspiracy to distribute marijuana grown by the Mendiolas and cared for by Cruz. Reyes testified that Gaona told her that marijuana was being grown at the Rocksprings ranch; that marijuana had come from the Mendiolas' residence; that marijuana was delivered to her in Austin from the Mendiolas; and that Wolf and she in turn sold it for $2000 per pound. There was also testimony from another witness that Elsa Mendiola sold marijuana to Gaona.

As noted, Cruz contends also that there was no evidence that he was involved in a conspiracy *with Reyes*, and that the statements *made by Reyes* were not made in furtherance of a conspiracy involving her and Cruz. But, the focus concerning a Rule 801(d)(2)(E) admission is on the declarant, Gaona, not Reyes.

### D.

The Mendiolas challenge the sufficiency of the evidence on conspiracy and, with Cruz, on possession with intent to distribute. For such challenges, the evidence is viewed in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the jury; and, it is sufficient if a rational juror could have found that it established guilt beyond a reasonable doubt. *E.g., **United States v. Montoya-Ortiz***, 7 F.3d 1171, 1173 (5th Cir. 1993). Toward that end, "[i]t is not necessary that the evidence exclude every reasonable hypothesis of

innocence or be wholly inconsistent with every conclusion except that of guilt....  A jury is free to choose among reasonable constructions of the evidence." *Id.*  (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982), *aff'd*, 462 U.S. 356 (1983).

As noted, concerning the insufficiency claims as to both charges, a key Government witness was Figueroa.  Figueroa, who was also a key player in the operation, engaged in a marijuana growing and dealing relationship with James Mendiola and Wolf.  He testified that he had a drug dealing relationship with James Mendiola; that Wolf oversaw the growing operation; that the marijuana began growing at the Mendiola residence and was then transferred to the Rocksprings ranch; and that Cruz was a laborer in charge of caring for the plants.  James Mendiola also showed him marijuana that was growing.  Figueroa testified also that, once the marijuana was transferred from the residence to the ranch, James Mendiola would go to the ranch to make sure the plants were perfect; that Cruz lived both at the Mendiola residence and at the Rocksprings ranch; and that Elsa Mendiola was aware of the growing operation, because she witnessed the loading of marijuana on a truck.

1.

"To establish a conspiracy under 21 U.S.C. § 846, the government must prove that a conspiracy existed, that each co-

defendant knew of the conspiracy, and that each co-defendant voluntarily joined in it." *Montoya-Ortiz*, 7 F.3d at 1173 (internal quotation marks and citation omitted). The elements for conviction under § 846 "may be proved by circumstantial evidence and '[c]ircumstances altogether inconclusive, if separately considered, may, by their number and joint operation ... be sufficient to constitute conclusive proof.'" *United States v. Broussard*, 80 F.3d 1025, 1031 (5th Cir.), *cert. denied*, ___ U.S. ___, 117 S. Ct. 264 (1996) (quoting *United States v. Roberts*, 913 F.2d 211, 218 (5th Cir. 1990), *cert. denied,* 500 U.S. 955 (1991)).

Approximately 450 marijuana plants were found growing at the Mendiolas' residence, with over 300 plants found growing at the Rocksprings ranch. Also, the Mendiolas were overheard in numerous intercepted telephone calls discussing marijuana purchases and deliveries in coded language.

James Mendiola was a leader and organizer of the grow operation. Moreover, an undercover FBI Agent testified that James Mendiola informed him that he grew seedless marijuana and offered to sell it to the Agent.

In addition, as noted, Elsa Mendiola was present when a shipment of marijuana was loaded aboard a truck; and, as also noted, she used code in discussing drugs on the telephone, and, sold marijuana to her sister, Gaona, for distribution in Austin (the sister discussed in part II. C. *supra*).

In sum, there was more than sufficient evidence for a reasonable juror to find, beyond a reasonable doubt, that a conspiracy existed, and that the Mendiolas were aware of, and voluntarily participated in, it.

2.

Under 21 U.S.C. § 841(a)(1), the Government must prove three elements: (1) knowing (2) possession of a controlled substance (3) with intent to distribute it. *See United States v. Brown*, 29 F.3d 953, 958 (5th Cir.), *cert. denied,* 513 U.S. 1021 (1994). Of course, these elements may be established by circumstantial evidence. *United States v. Cardenas*, 9 F.3d 1139, 1158 (5th Cir. 1993), *cert. denied,* 511 U.S. 1134 (1994). For example, intent to distribute may be inferred from the quantity, value, and quality of the drugs involved. *United States v. Casilla*, 20 F.3d 600, 603 (5th Cir.), *cert. denied,* 513 U.S. 892 (1994); *Cardenas*, 9 F.3d at 1158.

Along this line, the elements for aiding and abetting a criminal offense, in violation of 18 U.S.C. § 2, are association with criminal activity, participation in it, and acting to help it succeed. *See United States v. Pedroza*, 78 F.3d 179, 183-84 (5th Cir. 1996); *United States v. Vaden*, 912 F.2d 780, 783 (5th Cir. 1990). "Association means that the defendant shared in the criminal intent of the principal.... Participation means that the defendant engaged in some affirmative conduct designed to aid the

venture.... Although relevant, mere presence and association are insufficient to sustain a conviction of aiding and abetting." ***United States v. Salazar***, 66 F.3d 723, 729 (5th Cir. 1995).

Approximately 450 plants were seized at the Mendiolas' residence; approximately 315, at the Rocksprings ranch. Additionally, there was evidence regarding the premium price and high quality of the seedless marijuana being grown by the Mendiolas; that James Mendiola actively offered to sell marijuana; that Elsa Mendiola witnessed loading marijuana shipments; that she was engaged in a distribution scheme with her sister in Austin; that Cruz tended and cared for the marijuana at the Rocksprings ranch; and that he was seen at the ranch the majority of the time (indeed, he was the only person there when the search was conducted). There was also testimony that, when Cruz was not working at the ranch, he lived at the Mendiola residence. And, a money order receipt and an emergency notification card bearing Cruz's name and the address for the Mendiolas' residence were found at that residence.

The jury could reasonably find, beyond a reasonable doubt, that the Mendiolas and Cruz possessed marijuana with intent to distribute.

E.

A sentence will be upheld "unless it was imposed in violation of law; imposed as a result of an incorrect application of the

sentencing guidelines; or outside the range of the applicable sentencing guideline and is unreasonable." *United States v. Montoya-Ortiz*, 7 F.3d 1171, 1179 (5th Cir. 1993) (*quoting United States v. Haymer*, 995 F.2d 550, 552 (5th Cir. 1993)).

## 1.

Appellants contend that the court erred in calculating their offense level based upon a finding that there were 771 marijuana plants at the residence and ranch.  We accept such sentencing findings unless they are clearly erroneous. *E.g., United States v. Sotelo*, 97 F.3d 782, 799 (5th Cir.), *cert. denied,* ___ U.S. ___, 117 S. Ct. 620 (1996); *United States v. Robins*, 978 F.2d 881, 889 (5th Cir. 1992); *United States v. Otero*, 868 F.2d 1412, 1414 (5th Cir. 1989).  And, due deference is given to the district court's application of the Sentencing Guidelines to those findings. *Id. Robins*, 978 F.2d at 889.

Moreover, "a presentence report generally bears sufficient indicia of reliability to be considered as evidence by the trial court in making factual determinations required by the Guidelines." *Robins*, 978 F.2d at 889.  And, the district court is well within its province "to rely on a presentence report's construction of evidence to resolve a factual dispute, rather than relying on the defendant's version of the facts." *Id.* (internal citations and quotations omitted).

- 14 -

The presentence report, adopted by the district court, stated that the offense involved a total of 771 growing marijuana plants. There was testimony from the Agents conducting the searches regarding the number of plants seized, their stage of growth, and their root structure. They testified further that plants were not picked or counted unless they appeared to be viable and capable of growth. Additionally, there was testimony from a Government expert regarding the grow operation and the nature of the plants.

During oral argument for this appeal, counsel for James Mendiola contended that an FBI Special Agent simply "guessed" during sentencing at the number of plants seized at the residence. However, the Agent testified at trial that 455 plants were seized at that site. Based on our review of the record, we cannot say that the plant quantity finding was clearly erroneous.

2.

Cruz contends that the district court erred by including the plants seized at the Mendiola residence in calculating his base offense level. But, the court had the discretion to consider amounts that were part of a common plan or scheme to distribute. *United States v. Ponce*, 917 F.2d 841, 844 (5th Cir. 1990) (per curiam), *cert. denied,* 499 U.S. 940 (1991); *United States v. Sarasti*, 869 F.2d 805, 806 (5th Cir. 1989). Moreover, under the Guidelines, the court may consider as relevant conduct occurrences which did not result in a conviction in determining the actual

guideline range. *See **United States v. Taplette***, 872 F.2d 101, 106 (5th Cir.), *cert. denied,* 493 U.S. 841 (1989). As reflected *supra*, there was ample evidence to link Cruz to both the Rocksprings ranch and the Mendiola residence. Accordingly, the court did not clearly err by including the plants seized at the latter.

3.

While this appeal was pending, Guidelines § 2D1.1(c) was amended by replacing the one kilogram per plant ratio with an instruction to base the sentence upon the greater of the actual weight of the usable marijuana, or 100 grams per plant. *See* U.S.S.G. App. C, Amendment 516 (Nov. 1, 1995) (amending the notes and commentary to U.S.S.G. § 2D1.1). This amendment may be applied retroactively by the district court. ***United States v. Boe***, 117 F.3d 830, 831 (5th Cir. 1997). Appellants contend, and the Government concedes, that the amendment may affect their sentences.

A motion pursuant to 18 U.S.C. § 3582(c)(2) "permits a district court to reduce a term of imprisonment when it is based upon a sentencing range that has subsequently been lowered by an amendment to the Sentencing Guidelines, if such a reduction is consistent with the policy statements issued by the Sentencing Commission." ***Boe***, 117 F.3d at 831. The "district court has the discretion to deny a section 3582(c)(2) motion, even if the retroactive amendment has lowered the guideline range." ***United States v. Ursery***, 109 F.3d 1129, 1137-38 (6th Cir. 1997).

Consequently, our affirmance of the sentences is without prejudice to Appellants seeking a reduction in sentence pursuant to § 3582(c)(2) and Amendment 516.

4.

Appellants maintain that the district court erred in applying Guideline § 2D1.1(b)(1) (increase offense level by two for possession of dangerous weapon) because the seized-firearms were neither possessed during, nor connected to, the commission of any offense. The increase should be given if a weapon was present, *unless it is clearly improbable* that it was connected to the offense. **United States v. Sparks**, 2 F.3d 574, 587 (5th Cir. 1993) (citing § 2D1.1, comment. (n.3)), *cert. denied,* 510 U.S. 1056 (1994). In this regard, the analysis of the term "use" of a weapon in **Bailey v. United States**, ___ U.S. ___, 116 S. Ct. 501 (1995), was limited to 18 U.S.C. § 924(c)(1); contrary to Appellants' contention, it has no application in the present context. *See* **United States v. Castillo**, 77 F.3d 1480, 1499 n.34 (5th Cir.), *cert. denied,* ___ U.S. ___, 117 S. Ct. 180 (1996).

The evidence established that four handguns, including one found in a briefcase used by Elsa Mendiola, and one shotgun were found at the Mendiolas' residence, where 455 plants were found. Additionally, a shotgun and one rifle were found at the ranch, where 316 plants were found.

The sentencing enhancement "for weapon possession reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1, comment (n.3). Moreover, "the mere presence of [a] gun, loaded or not, can escalate the danger." *United States v. Mitchell*, 31 F.3d 271, 277 (5th Cir.), *cert. denied,* 513 U.S. 977 (1994). The evidence clearly established the presence of the weapons at the marijuana growing operations. The finding that the weapons were "connected" to the offenses was not clearly erroneous; restated, it was *not clearly improbable* that they were connected to the offense.

F.

While their convictions and sentences were on appeal, Appellants obtained information relating to Moises Perez, an FBI informant and witness, and relating to a Special Agent, who also testified. The Government dismissed charges in an unrelated case in which Perez was to be a witness because they allegedly had lost confidence in him.

The information revealed that Perez had entered a plea of no contest to the offense of organized crime in Texas state court, which was never given to Appellants prior to trial and that, consequently, Perez may have testified falsely at their trial. Additionally, information that the Special Agent had been investigated by the FBI's Office of Professional Responsibility was never revealed.

As a result, Appellants moved for a new trial; the motion was denied without a hearing.[2] (The Government submitted to the district court for *in camera* inspection the materials relating to the investigations of the Special Agent.)

Impeachment evidence, which is primarily at issue here, is covered by the disclosure requirements of **Brady v. Maryland**, 373 U.S. 83 (1963). *See* **Wilson v. Whitley**, 28 F.3d 433, 435 (5th Cir. 1994), *cert. denied,* 513 U.S. 1091 (1995) (*citing* **United States v. Bagley**, 473 U.S. 667, 676 (1985)). The Court has held: "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within [**Brady's**] general rule." **Giglio v. United States**, 405 U.S. 150, 154 (1972) (*quoting* **Napue v. Illinois**, 360 U.S. 264, 269 (1959)). **Brady** rulings are reviewed *de novo.* **United States v. Green**, 46 F.3d 461, 464 (5th Cir.), *cert. denied,* 515 U.S. 1167 (1995).

---

[2] Pursuant to FED. R. APP. P. 4(b), Cruz's appeal from the new trial denial (No. 97-50393) was untimely. On remand, the district court determined that the untimely filing was *not* due to excusable neglect. *See* FED. R. APP. P. 4(b) ("upon showing of excusable neglect the district court may ... extend the time for filing a notice of appeal."). We review an excusable neglect determination for abuse of discretion. *See* **United States v. Clark**, 51 F.3d 42, 43 n.5 (5th Cir. 1995). We cannot say that the court abused its discretion when it determined that Cruz's attorney's failure to properly read Rule 4(b) constituted *in*excusable neglect. Accordingly, Cruz's appeal in No. 97-50393 is **DISMISSED**.

***Brady*** violations require reversal only if there is a "reasonable probability" that the outcome of the trial would have been different had the evidence been disclosed. *See* ***Bagley***, 473 U.S. at 682. Such "reasonable probability" is established only when the failure to disclose "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." ***Kyles v. Whitley***, 514 U.S. 419, 435 (1995).

The challenge at hand focuses on withheld impeachment evidence regarding Perez and the Special Agent. "In assessing the materiality of undisclosed impeachment evidence, 'we must consider the nature of the impeachment evidence improperly withheld and the additional evidence of the defendant's guilt independent of the disputed testimony.'" ***Wilson v. Whitley***, 28 F.3d 433, 439 (5th Cir. 1994) (quoting ***United States v. Weintraub***, 871 F.2d 1257, 1262 (5th Cir. 1989)) *cert. denied,* 513 U.S. 1091 (1995). There is overwhelming evidence of the Mendiolas' guilt, independent of the evidence in issue that could be obtained from Perez or the Special Agent. Consequently, there is no ***Brady*** violation; a new trial was properly denied. (In connection with his new trial motion, James Mendiola sought the disqualification of the Assistant United States Attorney who tried the case. Obviously, there being no error regarding the new trial denial, we do not reach this issue.)

III.

For the foregoing reasons, Cruz's appeal from the new trial denial (No. 97-50393) is **DISMISSED**; the Mendiolas' appeal from such denial (No. 97-50407) is **AFFIRMED**; and the convictions and sentences (No. 97-50177) are **AFFIRMED**, without prejudice to Appellants moving for a reduction in sentence.