# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40812

United States Court of Appeals
Fifth Circuit

**FILED**

July 22, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

LUIS EDUARDO ALVAREZ,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:11-CR-425

Before JOLLY, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

Luis Eduardo Alvarez, resentenced following a remand by this court, again appeals his sentence for conspiracy to possess with intent to distribute more than five kilograms of cocaine and possession of a firearm in furtherance of a drug trafficking offense. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2011, Special Agents Andres Rivas and Mike Weddel of the Bureau of Alcohol, Tobacco, and Firearms (ATF) were in Laredo, Texas

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

investigating Mark Anthony Milan, an illegal weapons dealer and one of defendant-appellant Alvarez's codefendants.     Agent Rivas, working undercover, met Milan through a confidential informant ("CI") and attempted to reach an agreement to purchase ten to twelve automatic rifles from Milan. The controlled purchase failed when Agent Rivas aborted the transaction, seeking to avoid raising Milan's suspicions and fearing that Milan might attempt to rob him of the weapons.  Thereafter, Agent Rivas showed Agent Weddel a photograph of Milan that he discovered while checking the license plate of the vehicle Milan was driving.  Agent Weddel recognized Milan as someone he had previously investigated for armed robbery and assault on a residence in Laredo.  According to the Government, such crimes are common but usually go unreported to local police.

Due to his belief that Milan was predisposed to violent, armed home invasions, Agent Weddel devised a plan to stage a home invasion and propose to Milan that he participate in it.  On February 10, 2011, Agent Weddel met with a CI, Milan, and Cristobal Cervantes, another codefendant, at a Whataburger restaurant to discuss the details of the planned raid.  Agent Weddel explained to Milan and Cervantes that he was a member of a drug-trafficking organization and was being cheated out of his rightful share of the organization's income.  He explained that his organization would be placing 25 kilograms of cocaine in a stash house in Laredo and wanted those at the meeting to help him steal it.  He further explained that there would be two men guarding the house, at least one of them large, ill-tempered, and heavily armed.  To improve the attractiveness of the proposal to Milan and Cervantes, Weddel told them that he only wanted five kilograms of cocaine for himself and they could have whatever else was left, but probably no less than twenty kilograms. (There never were any drugs nor was there an actual stash house that would be used for this operation.)

No. 13-40812

On March 9, 2011, Agent Weddel placed a phone call to Milan to inform him that the drugs had arrived at the stash house. Milan, Cervantes, Alvarez, and a fourth codefendant, Michael Porras, met Weddel at a Walgreens store, where the entire group, including a CI, drove in a caravan to a storage facility to pick up another vehicle. Upon arrival, Agent Weddel exited his vehicle, as did Milan and Cervantes. Agent Weddel then insisted upon meeting Alvarez and Porras, whom he had never met. Over the next few minutes, the four explained to Agent Weddel that they were "ready"; Cervantes took a Glock pistol from the center console of his vehicle and placed it in his waistband; Porras showed him a bag which contained two rifles; and Alvarez stated "I'm gonna go in first" and "we're not rookies." Moments later, Agent Weddel stepped away from the others while talking on his cellular phone. At that point, law enforcement officers descended on the gathering and arrested the four codefendants.

In June 2011, a grand jury returned a six-count indictment against the four men. Count One charged a conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Count Six charged possession of firearms in furtherance of the drug conspiracy count in violation of 18 U.S.C. § 924(c)(1)(A). After a three-day trial, the jury convicted Alvarez of Counts One and Six.

In the original Presentence Report ("PSR"), Alvarez's base offense level for Count One was 34. He received a two-level increase for possessing a dangerous weapon and a four-level increase for wearing a bulletproof vest during the sting. With a total offense level of 40 and a criminal history category of I, his Guideline range was 292-365 months imprisonment. The district court sentenced him to 292 months on Count One and to a mandatory 60-month term for Count Six, to run consecutively. Alvarez appealed his conviction and sentence.

No. 13-40812

Alvarez's appeal included an objection to the two-level enhancement for possession of a firearm during the offense.  We vacated his sentence on that ground.  *United States v. Cervantes*, 706 F.3d 603, 620 (5th Cir. 2013).  We held that the firearm enhancement "impermissibly punishes a defendant twice for the same conduct if it is levied in conjunction with a sentence for violating [Section 924]."  *Id.*  We concluded the district court had plainly erred, vacated the sentence, and remanded for resentencing.  *Id.*

On remand, the probation office's sole revision to the PSR was to remove the two-level firearm enhancement.  His new total offense level was 38 and his new Guidelines range was 235-293 months.  Alvarez, represented by new counsel, brought five new objections to the PSR that were not raised at his original sentencing.  These were: (1) that he did not make the statements attributed to him by Agent Weddel and relied upon in sentencing him, (2) that the PSR incorrectly concluded that he intended to steal from the 25 kilograms of cocaine, (3) that the drug quantity had been entirely fabricated by the Government, (4) that the body armor enhancement was improper because he was induced to wear it by Agent Weddel's admonitions about the dangerous, armed guards at the stash house, and (5) that he should have been given a minor participant reduction because he did not meet with Agent Weddel, Milan, and Cervantes at the Whataburger.  He further requested a downward departure or variance based on imperfect entrapment or sentencing entrapment, requested the same for family responsibilities, and finally requested a non-Guideline sentence under 18 U.S.C. § 3553(a).  As we will discuss, we conclude that the five enumerated new objections were properly held to be foreclosed.  We will also discuss why the district court could and did consider a departure or variance based on family responsibilities.

The district court stated that the remand was limited to removing the two-level firearms enhancement.  Nonetheless, the district court permitted

Alvarez's attorney to argue all of his substantive objections as "mitigation . . . that would go to the overall sentence that the Court imposes."  The district court again sentenced him to 235 months on Count One and to the 60-month mandatory consecutive term on Count Six.  This constituted the lowest sentence in the Guidelines range, as calculated in the revised PSR.  On appeal, Alvarez argues that the district court erred by limiting the scope of the remand to removing the two-level firearm enhancement, that the district court should have granted his specific objections, and that the district court failed to adequately consider the Section 3553 sentencing factors.

## DISCUSSION

This court reviews a district court's interpretation of a remand order *de novo*.  *United States v. Pineiro*, 470 F.3d 200, 204 (5th Cir. 2006).  Review of the substantive reasonableness of a sentence pursuant to Section 3553 is for abuse of discretion; a within-Guidelines sentence is presumptively reasonable.  *United States v. Alvarado*, 691 F.3d 592, 596 (5th Cir. 2012).  That "presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors."  *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009) (citation omitted).  Where "the term of imprisonment is not lengthened by a district court's consideration of an impermissible factor . . . reversal is not required."  *United States v. Teel*, 691 F.3d 578, 587 (5th Cir. 2012).  In our abuse-of-discretion review, this court will not reweigh the Section 3553 factors.  *See Gall v. United States*, 552 U.S. 38, 51 (2007).

In Alvarez's first appeal, this court concluded: "For the foregoing reasons, the sentences of Alvarez and Cervantes are VACATED and REMANDED for resentencing.  We AFFIRM Appellants' convictions and sentences on all other grounds."  *Cervantes*, 706 F.3d at 621.  The district court, on remand, stated

"the only issue is the gun enhancement and the other issues, the Court believes, are foreclosed." The court also indicated that it would consider some of Alvarez's arguments for purposes of mitigation, and for whether a variance or departure should be granted, as we explain later.

Alvarez argues that the district court should have conducted a full, *de novo* sentencing and considered all of the new objections his new counsel raised. The Government counters that all but one of Alvarez's new arguments presented at the resentencing "were waived when he failed to raise them at his initial sentencing and in his first appeal."

This circuit has previously disagreed with those courts that have held "resentencing hearings following a remand are to be conducted *de novo* unless expressly limited by the court in its order of remand." *United States v. Marmolejo*, 139 F.3d 528, 531 (5th Cir. 1998). We take the minority view, shared by the D.C. and Seventh Circuits. *See id.* (citing *United States v. Whren*, 111 F.3d 956 (D.C. Cir. 1997); *United States v. Parker*, 101 F.3d 527 (7th Cir. 1996)). "The only issues on remand properly before the district court are those issues arising out of the correction of the sentence ordered by this court." *Marmolejo*, 139 F.3d at 531. "All other issues not arising out of this court's ruling and not raised before the appeals court, *which could have been brought in the original appeal*, are not proper for reconsideration by the district court below." *Id.* (emphasis added). Alvarez refers us to a decision where we stated: "if we had intended only a ministerial resentencing, we could have reversed and rendered" the appropriate sentence. *United States v. Matthews*, 312 F.3d 652, 660 (5th Cir. 2002). We made that statement because our first decision had required on remand an entire reconsideration of the sentence for one count in light of errors made in the original sentencing; consequently, the resentencing was *de novo. Id.* at 659-60. In addition, the case involved an intervening Supreme Court decision that recognized the validity of an

argument similar to one the defendant had made in his first appeal, but which we had rejected. *Id.* at 657 (discussing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

The *Matthews* circumstances do not exist here. The general rule applies, that *de novo* resentencing is improper following a remand for correction of a specific and defined sentencing error. The district court's interpretation of our remand was correct. Consequently we will not consider Alvarez's objections to his PSR and Guidelines calculations that could have been made at the time of his original sentencing but were not.

We distinguish whether Alvarez had shown grounds for a departure or variance from our rulings about whether the objections were new. Alvarez asserts that after his initial sentencing, his wife left the home where their children lived, leaving Alvarez's parents responsible for the children. He argues the district court erred in concluding that it could not consider the new family circumstances. Specifically, Alvarez sought a downward departure under Section 5H1.6 of the Guidelines due to family responsibilities. That section applies only where there are "unique or extraordinary circumstances." *United States v. Brown*, 29 F.3d 953, 961 (5th Cir. 1994). In *Brown*, this court concluded that the mere disruption of parental relationships during a parent's incarceration is not extraordinary for the purposes of the Guideline. *Id.* Alvarez suggests that it is extraordinary that his children will be in the sole care of his parents instead of his wife.

The initial difficulty with Alvarez's argument is determining whether there is sufficient factual support for it. We find no explicit evidence or even argument presented at the time of resentencing, that Alvarez's wife was taking care of the children at the time of his original sentencing, but thereafter left his parents' home and was no longer caring for the children. Both the 2011 PSR and the amended one in 2013 state that Alvarez's common-law wife

7

resided with the children at the home of Alvarez's parents, but neither PSR makes any assertions about her parenting abilities or whether she, or the grandparents alone, or all of them were caring for the children. No objection was made in 2011 to the statements in the PSR.

In 2013, among the written objections filed by Alvarez's new counsel to the PSR was that "Alvarez's wife cannot care for the children"; "his common-law wife currently resides with another individual while his children reside with his parents"; Alvarez's parents have cared for his children since the date of his incarceration"; the children "are being cared for by his parents because their mother is not an adequate care taker"; and the children have been "without the care, love and assistance of their mother for over 24 months since she is not an adequate care taker . . . ." These assertions ignore whether the children's mother previously had been an adequate caregiver but lost interest or capacity after Alvarez was incarcerated, or whether the mother even prior to Alvarez's first sentencing had not been responsible for the care of her children. Alvarez's counsel at the second sentencing hearing said that the defendant's parents had been caring for the children because "their mother has not been able to" do so, but he never alleged that was a change from the situation at the time of the first sentencing.

The district judge at least partially noted this ambiguity. At the hearing after the remand, though making a point as to a different sentencing decision, the court said it did not recall from the first sentencing "whether the issue about the mother not being able to care for the children was even a factor" in making a recommendation as to where Alvarez would be imprisoned. The court also concluded that there was nothing clearly new about the facts being presented about the children:

> But all of the things that Mr. Vela [Alvarez's counsel] touches on are the things that were before the Court originally.

You know, perhaps there's a little bit of a difference in the fact that your parents are taking care of your children now when maybe that wasn't necessarily pointed out at the time. Perhaps there's some difference in how he argues some of the things that are in the report already, but everything that he touches on was before the Court originally and was considered by the Court.

Even if the children's mother not being an adequate caregiver and leaving the home where the children lived were new factual matters arising after the first sentencing hearing, the district court did not refuse to consider those facts in setting the sentence. Counsel's written objections to the PSR's statements about the family situation were in a section entitled "Request for Downward Departure and/or Variance"; the district court stated that it would consider the arguments for just those purposes:

> And then just so that we're clear, I'm not disregarding the arguments that you have made, Mr. Vela. The Court believes that they are proper arguments to make in considering whether a variance should be made or even a departure should be made. So, the Court has given them due weight, but the Court believes that a sentence within the guideline range as to each one of these cases is necessary.

More generally, the court said it would consider all of Alvarez's arguments in order to analyze mitigation:

> The Court obviously can consider in the sentence that it imposes whatever you may wish to present by way of mitigation and in that respect you may be arguing some of the points that you have made in your response, but that would go to the overall sentence that the Court imposes rather as to a specific objection to the PSR.

We reject the arguments that the district court refused to consider as mitigation, or in support of a variance or departure, the facts presented about the current situation with his two children. Whether it was a new factual circumstance or just a better explanation of how his children were being cared for all along, the issue of whether a change of family responsibilities should

cause a departure or variance in the sentence was known, weighed, and ultimately rejected by the district court.[1]

More generally, district courts have broad discretion in applying the sentencing factors in 18 U.S.C. § 3553. The district court is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of the statute.  18 U.S.C. § 3553.  *Marmolejo* does not preclude the district court from considering Alvarez's new and renewed arguments as a part of its Section 3553 analysis.  Alvarez has not argued that the district court ignored a relevant factor or relied on an improper factor.   His argument is simply that the district court did not, in its consideration of all the Section 3553 factors, properly weigh his objections.  Alvarez specifically argued that the district court failed to take into account his limited criminal history, his family circumstances, and the imperfect or sentencing entrapment arguments that it would not consider as specific Guidelines objections.

Alvarez has not presented any compelling argument that the district court abused its discretion under Section 3553.  He certainly disagrees with the district court's exercise of its discretion, but that is not grounds for reversal. *See Gall*, 552 U.S. at 51.  Furthermore, this court does not recognize "imperfect entrapment" or "sentencing entrapment" in any context, including for sentencing variance purposes. *See United States v. Stephens*, 717 F.3d 440, 446 (5th Cir. 2013) ("We have never recognized sentencing entrapment as a defense…").  We decline to do so here.

Alvarez has not shown that his circumstances, whether taken individually or together, compel the conclusion that the district court abused

---

[1] Had the district court not recognized its authority to consider the possibility of a departure, that would be procedural error. *United States v. Robinson*, 741 F.3d 588, 601-02 (5th Cir. 2014).  Because the district court did recognize its authority to consider a departure, we lack jurisdiction to consider its denial.  *See United States v. Tuma*, 738 F.3d 681, 691 (5th Cir. 2013).

its discretion under Section 3553.  He has failed to meet his burden of rebutting the presumption of reasonableness.  We will not disturb the district court's within-Guidelines sentence based upon its application of the Section 3553 factors.  *See Alvarado*, 691 F.3d at 596.

AFFIRMED.